Mary Ann Bumblauskas, Plaintiff-Appellee, v. South Suburban Safeway Lines, Inc., an Illinois Corporation, Defendant-Appellant.

**Gen. No. 53,173.**

First District, Third Division.
April 24, 1969.

Dale, Haffner, Grow & Overgaard, of Chicago (Mitchell J. Overgaard, of counsel), for appellant.

Sussman & Hertzberg, of Chicago (Harvey S. Sussman, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

South Suburban Safeway Lines appeals from a $3,000 judgment entered, after a nonjury trial, in favor of Mary Ann Bumblauskas, a fourteen-year-old high school student, who was injured in getting off a bus operated by the defendant.

The accident happened in the afternoon as the plaintiff was on her way home from school. The bus traveled east on 127th Street to Throop Street, Chicago, where it was to make a left turn to let off passengers on the east side of Throop.

The bus was a standard model with the driver at the left front, a door to his right and a two-step stairwell leading to the door with handrails on either side. Mary Ann stood at the front of the bus facing the doorway with her right hand on the handrail and her left hand carrying books and a purse, waiting to leave. According to her, the front door was open as the bus made the left turn and she was thrown out when the bus suddenly stopped to discharge passengers. She testified that she did not touch the stairs or any part of the front of the bus as she fell; that she landed on her knees and elbows, then swerved and struck the back of her neck on the pavement. The girl who stood in back of her in the bus helped her to her feet and gathered her scattered books. The bus driver asked her if she was all right, she said she was and walked away.

Therese Rubin, a friend of Mary Ann, was also waiting to get off; she was standing in the aisle of the bus behind the plaintiff. She testified that the bus made a

sharp and abrupt stop. She lost her balance, fell forward, and struck her wrist on the coin box as Mary Ann flew out of the door and onto the ground.

The defense witnesses testified that the bus made a smooth turn and stop. The bus driver stated that before making the turn to the north he stopped for oncoming traffic; that from five to seven girls were in the front waiting to leave as he brought the bus to a complete and easy stop, and that the plaintiff was the first one in line and was on the second step. He said he opened the door after making the stop, that the plaintiff and three other girls rushed out and the first thing he saw was the plaintiff three to four steps from the bus. However, he went on to say that: "She fell out face down both hands spread out right on her face"; she "tripped and fell to the ground"; she "did not fall from the bus onto the street" and "I don't know if she fell directly from the bus to the street."

The other defense witnesses were three school girls who were on the bus at the time of the accident. Two testified that the door did not open until after the bus stopped and that the plaintiff fell from the bottom step to the ground. The third testified that the plaintiff tripped after she had fully alighted from the bus. This testimony was contradictory to a statement she had given in her own handwriting at the time of the accident which said that the plaintiff tripped on the bottom step of the bus.

The defendant contends that the judgment was against the manifest weight of evidence and argues that there was insufficient proof that the bus stopped abruptly, and that it was physically impossible for the plaintiff to have been ejected as she claimed. It is pointed out that she testified that she did not touch the stairs, doorframe or other part of the bus as she fell; that if the stop had been abrupt she would have been thrown toward the front and not through the side door.

The plaintiff and Therese Rubin testified that they were the only passengers waiting to go out the front door; that there was a sudden stop which caused them both to fall; that the plaintiff was thrown through the open door and Rubin against the coin box. Although they were propelled in different directions, the plaintiff was standing at the top of the stairs with her right hand on the handrail and her left arm full of books; this may have altered the normal forward motion and swung her out the side.

In a nonjury trial the judge must determine the credibility of the witnesses and the weight to be accorded their testimony, and his decision will not be disturbed unless it is against the manifest weight of evidence. Hood v. Brinson, 30 Ill App2d 498, 175 NE2d 300 (1961). The trial judge chose to believe the testimony that the stop was abrupt and that this stop threw the plaintiff from the bus. This conclusion was not against the manifest weight of the evidence.

The defendant next argues that the remarks of the trial judge concerning the credibility of the defendant's witnesses suggests that his decision was the result of anger or prejudice and that it was based on the rejection of the defendant's evidence rather than on the adequacy of the plaintiff's proof. The judge commented that the bus driver's testimony was incapable of belief and he was critical of the three school girls who appeared for the defense, noting inconsistencies in their testimony. He also remarked that they collaborated in filling out cards given them by the bus driver immediately after the accident; that prior to the trial they were told of the driver's statement that he stopped at the intersection of 127th and Throop Streets to wait for oncoming cars to clear and that their like testimony was probably because of this. In making these comments the judge not only voiced his displeasure at the testimony of the defendant's witnesses but he explained the reasons for his

judgment and for resolving the credibility issue against the defendant. Although the criticisms may have been unduly harsh they in no way indicated prejudice or that the plaintiff was held to a lesser degree of proof than was required.

At the conclusion of the plaintiff's case on the issue of liability her attorney informed the judge that the medical witnesses would not be available until another day. It was decided to proceed with the defendant's case. The plaintiff made a motion to exclude witnesses and the motion was granted. After a short recess the judge reversed his ruling saying that the motion should have been made at the proper time. The bus driver then testified. After the driver left the stand the plaintiff renewed her motion. This time the judge overruled the defendant's objection and granted the motion. The defendant contends that a motion to exclude witnesses must be made at the opening of trial and that granting the motion after the plaintiff and her occurrence witness had testified was error.

Whether it is proper to exclude the witnesses of the opposite party after the first party's witnesses have testified has never been squarely presented in Illinois. The closest Illinois case is the criminal case of People v. Winchester, 352 Ill 237, 185 NE 580 (1933), where the court indicated that an order to exclude after some testimony had been heard would not have been improper. The order referred to, however, was for the exclusion of additional witnesses for the same side. After one witness for the State had testified and during the cross-examination of the second, the defendant's attorney asked to have other witnesses for the State excluded from the courtroom. The court denied the motion because it came too late. In upholding the trial court's ruling, the reviewing court stated:

"The exclusion from the courtroom of witnesses waiting to be examined is a matter within the discretion

of the trial court. . . . The court might properly have granted the defendant's request in this case, even though some testimony had been taken before the request was made, but it was a matter within its discretion."

The nearest statutory approach to the problem in Illinois is limited to the preliminary examinations of defendants in criminal cases. The statute provides that at these hearings, during the examination of any witness, the judge may and on the request of either the defendant or the State shall, exclude all other witnesses. Ill Rev Stats 1967, c 38, § 109–3(c) (1967).

Dean Wigmore advocated unrestricted freedom in the use of the exclusionary privilege. He termed it "one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice." 6 Wigmore, Evidence, 3rd ed, § 1838. He stated: "It seems properly to be demandable as of right, precisely as is cross-examination" (§ 1839) and added, "It need not be demanded at the very opening of the testimony, at any time later, when the supposed exigency arises, the order may be requested." (§ 1840.) Notwithstanding the dean's observation that a motion to exclude need not be made before testimony begins, a review of the case law of the jurisdictions that have passed on the question does not disclose a uniform practice. In those few states where courts have held that a request may be made at any time, the decisions are generally predicated on statutes or rules. Blitch-Everett Co. v. Jackson, 29 Ga App 440, 116 SE 47 (1923); State v. Lea, 228 La 724, 84 So2d 169 (1955); Medrano v. City of El Paso (Tex Civ App), 231 SW2d 514 (1950); Clary v. State, 68 Tex Crim 290, 150 SW 919 (1912). In Pritchard v. Henderson, 19 Del 128, 50 A 217 (Del Super Ct 1901) the defendant's request for exclusion after he had examined three witnesses was denied because it came too late. In In re Hillman's Estate, 217 Mich 142, 185 NW

684 (1921) the trial court refused the plaintiff's request for exclusion after several witnesses had testified, and in Wiles v. Northern Pac. Ry. Co., 66 Wash 337, 119 P 810 (1911) the trial court granted the plaintiff's motion for exclusion after the plaintiff's case had been completed. Both decisions were sustained; however, the reviewing courts stated that the motions for exclusion should have been seasonably made. See also Kaufman v. U. S., 163 F2d 404 (1947) where the defendant's motion for exclusion, made after one and a half weeks of trial, was refused, and Tice v. Mandel (ND), 76 NW2d 124 (1956) where the trial court refused the defendant's request for exclusion after he had been called as an adverse witness and cross-examined by the plaintiff. In both cases the trial court's ruling was affirmed—the reviewing courts held that sequestration was within the trial court's discretion.

 The correct time to make a motion to exclude witnesses is before any witness has testified—this gives stability to the trial procedure and applies impartially to all parties. But the usefulness of the exclusionary device for the accurate ascertainment of truth is too important to automatically deny exclusion after the opening of trial. The court may, therefore, in its discretion, order exclusion in the midst of trial if it believes this is necessary to effectuate justice.

 In the present case, a principal reason given by the court for granting the exclusion was that the defendant's witnesses were young girls. The three witnesses may have been young but they had finished high school and were employed respectively as a secretary, a bookkeeper and an insurance policy writer. While the age of the witnesses did not justify the exclusionary order, the defendant has not shown how it was prejudiced by the order. The contention that since the plaintiff's occurrence witness heard her testify the defendant's witnesses should have been permitted to hear each other

testify would carry some force if the defendant had tried unsuccessfully to exclude the plaintiff's witnesses. Having made no such motion the defendant's contention must be reduced to the proposition that if its witnesses had heard each other testify they might have corrected the testimonial discrepancies which disturbed the judge. Such a proposition is untenable. The judge should have denied the plaintiff's untimely motion, but granting it where no harm resulted to the defendant was not the clear abuse of judicial discretion which demands reversal.

Finally, the defendant contends the award for damages was excessive. The plaintiff felt pain in her neck and her knees began to stiffen on the night of the accident. For the next month she was treated by her family doctor, who fitted her with a cervical collar. Her medical costs were $326 and she missed approximately three weeks of school. At the time of trial, about three and a half years later, she had difficulty, once or twice a month, turning her neck. An expert witness testified she had a permanent chronic sprain.

The question of damages is one for the trial judge in a nonjury trial and his decision will not be upset unless it is so excessive as to indicate passion or prejudice on his part. Healy v. Nordhous, 40 Ill App2d 320, 188 NE2d 227 (1963). In addition to medical expenses and her pain in the weeks following the accident, the plaintiff suffered discomfiture which continued to the time of trial. The award of $3,000 was not excessive.

The judgment is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.