ALSIP HOMEBUILDERS, INC., Plaintiff-Counter Defendant-Appellant, *v.* THOMAS J. SHUSTA *et al.,* Defendants-Counter Plaintiffs-Appellees.

(No. 55433;

First District—May 25, 1972.

Howard Harris and Lawence M. Freedman, both of Ash, Anos and Harris, of Chicago, for appellant.

William F. Rickelman, of Equi, Farwell, Rickelman & Proteau, of Oak Park, for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Plaintiff-counter defendant (hereinafter called Alsip) appeals from a judgment awarded to the defendant-counter plaintiff (hereinafter called Shusta) in the amount of $8100. Alsip does not appeal from the judgment entered against it on the original complaint that began this action. The Shusta counterclaim alleges that Alsip, a corporation engaged in the business of construction and sale of residential property, breached the Building and Real Estate Sales Contract entered into by the parties. The counterclaim was in two counts: Count I alleged the contract was breached in various aspects and demanded compensatory damages; Count II realleged the significant paragraphs of Count I and further alleged fraudulent activities of Alsip that precipitated the breach and demanded punitive damages. The jury verdict indicates that Shusta was awarded $3100 in compensatory damages and $5000 in punitive damages. In this appeal Alsip argues three grounds for reversal. First, that it did construct the Shusta's home in compliance with the contract, and the award of compensatory damages was against the manifest weight of the evidence. Second, it was denied its right to poll the jury. Third, it attacks the award of punitive damages on three grounds, the most important of which is its argument that punitive damages cannot be awarded in breach of contract actions.

We affirm in part and reverse in part.

On June 11, 1967, Alsip and Shusta entered into a contract in which Alsip agreed to build and Shusta agreed to buy a house to be completed at some future date. The contract was a standard form building and real estate sales contract with three added clauses typed on the reverse side. For purposes of this appeal the two significant covenants of this contract recite that the seller shall construct the residence in a good, substantial and workmanlike manner and that the structure was to be built in accordance with plans and specifications approved by the Federal Housing Administration.

Sometime before completion of the residence, Alsip recorded the deed conveying the real estate to Shusta. Upon completion of the structure,

a dispute arose between the parties as to certain alleged construction defects. Although Shusta moved into the house, he refused to accept the residence as presented and demanded that Alsip make repairs to bring the house into compliance with the plans and specifications as recited in the contract. Shusta's dissatisfaction with the house caused him to refuse to sign the acceptance document that was needed by the mortgage lender before mortgage monies would be released to Alsip.

Alsip did perform some repairs and corrections on the house and simultaneously demanded that Shusta sign the acceptance document. Shusta continued to refuse to sign until all the alleged defects were corrected.

Subsequently Alsip forwarded to the mortgage lender an acceptance document that contained the purported signatures of the Shusta's. Upon receipt of this document and the final F.H.A. inspection report, the mortgagee released the mortgage monies to Alsip. Shusta alleges that he never signed the acceptance document and, at the trial, produced an expert witness who testified that the purported signatures of Shusta and his wife were in fact forgeries.

Upon disbursement of these mortgage monies there remained a small amount allegedly owed Alsip. In January, 1969, Alsip filed suit to recover this balance. Shusta answered and counterclaimed alleging a breach of the building and sales contract. Count I alleged the specific, material defects in the structure that violated the provisions of the contract and demanded actual damages. Count II, demanding punitive damages, alleged that Alsip wilfully and maliciously caused to be delivered to the mortgagee the acceptance document bearing the forged signature of Shusta which caused the mortgagee to release all mortgage monies to Alsip who then refused further repairs on the house, thereby breaching the contract. Both the original complaint and the counterclaim were tried by a jury with the aforementioned results.

In support of its contention that it did construct the house in compliance with the contract and that the verdict was against the manifest weight of the evidence, Alsip places great reliance upon that part of the contract which obligates it to complete the dwelling substantially in accordance with F.H.A. approved plans and specifications. The record shows that this dwelling was periodically inspected during its construction. All of these inspection reports indicate that all building material and construction techniques used, and any variation from the original building plans, were consistently approved by the F.H.A. inspector. Alsip concludes that because the building met F.H.A. standards it, therefore, was built in compliance with the contract.

Shusta, in turn, argues that the contract was breached in a number

of ways. During the trial Shusta produced expert witnesses who testified that the completed structure was at variance with what was called for in the plans and specifications used in its construction.

We note that the contract which is the subject of this action contains another significant covenant. The body of the contract recites: "The Seller * * * covenants and agrees * * * to construct and complete, in a good substantial and workmanlike manner, a residence, specified as Seller's Plan No. 66-54 * * *" A reading of the contract discloses that the F.H.A. covenant, mentioned above, was not meant to supersede this latter covenant, and, therefore, the two covenants are independent of one another to the extent that compliance with he F.H.A. covenant does not mean compliance with the covenant providing for good workmanship.

■■ Understanding this aspect of the contract, we have reviewed the record and exhibits and find that the jury verdict was clearly not against the manifest weight of the evidence. We find that in significant aspects the dwelling in this case was not completed in a good, substantial and workmanlike manner although it may have had F.H.A. approval. As to the amount of actual damages awarded, we note that the jury heard a number of experts in the construction field give their estimates as to the costs of correcting the building defects, and the jury was taken to the site to view the building. Their verdict is not unreasonable.

■■ Alsip next argues that since it was deprived of its right to poll the jury, it should be granted a reversal. Alsip alleges that it informed the court that its attorneys were to be contacted before the jury returned its verdict in open court, and that this was not done. A party who brings a cause to a reviewing court must present in the record the proceedings to show the error complained of. (*Knecht v. Sincox* (1941), 376 Ill. 586, 35 N.E.2d 68.) The record in this case does not disclose any such request by Alsip. Therefore, that question is not subject to review by this Court.

Alsip next attacks the award of punitive damages on the ground that Illinois law does not permit punitive damages to be awarded in contract actions. *Ash v. Barrett* (1971), 1 Ill.App.3d 414, 274 N.E.2d 149.

It is significant that both counts of the counterclaim in this case were based upon the contract. Although Count II of the counterclaim alleges fraudulent conduct on the part of Alsip, the allegations are not those of a tort action. The theory of recovery in Count II is that punitive damages should be awarded because of the wilful and malicious conduct that precipitated the breach of contract alleged in Count I.

■ The general rule requires that punitive damages cannot be recovered in an action for breach of contract. 11 Williston, Contracts, Sec. 1340 (3d ed. 1968); 5 Corbin, Contracts, Sec. 1077 (1964); McCormick

on Damages, Sec. 290 (1935); 70 Harv. L. Rev. 517 (1957); Restatement of Contracts, Sec. 342.

The theory behind this rule rests upon a distinction drawn between compensation and punishment. If the general purpose underlying the law of damages is to promote security and prevent disorder, as Corbin points out, and breaches of contract do not cause as much resentment or other physical or mental discomfort as do wrongs called torts or crimes, then the remedies needed to prevent breaches of contract and satisfy the injured party are not as severe as those needed to punish the tort feasor or criminal. See Corbin, Sec. 1077, *supra*.

■■ Illinois seems to adopt the general rule, but the authority is not extensive. *Hayes v. Moynihan* (1869), 52 Ill. 423; *Ash v. Barrett* (1971), 1 Ill.App.3d 414, 274 N.E.2d 149.

However, a review of the authority in other jurisdictions confirms that the vast majority does not allow punitive damages to be awarded in contract actions. *Schroeder v. Nationwide Mutual Ins. Co.* (1965), 242 F.Supp. 787 (DC SD NY); *Ellis v. Brockton Pub. Co.* (1908), 198 Mass. 538, 84 N.E. 1018; *White v. Benkowski* (1967), 37 Wis.2d 285, 155 N.W.2d 74; *Williams v. Kansas City Public Service Co.*, 294 S.W.2d 36; *Hoy v. Gronoble* (1859), 34 Pa. 9; *Chelini v. Nieri* (1948), 32 C.2d 480, 196 P.2d 915.

■■ We affirm the judgment for actual damages in the amount of $3100 and reverse the judgment for punitive damages, because they are predicated on an alleged breach of contract.

Judgment affirmed in part; reversed in part.

DEMPSEY and McNAMARA, JJ., concur.