DOROTHY SEARS, Plaintiff-Appellee, *v.* MICHAEL L. WEISSMAN *et al.,* Defendants-Appellants.

(No. 55985;

First District—July 17, 1972.

Julius L. Sherwin, of Chicago, (Sherwin & Sherwin, of counsel,) for appellants.

Wooster, Mugalian and Klingner, of Chicago, (Harold W. Klingner, of counsel,) for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Dorothy Sears (plaintiff) filed an action at law against National Atomic Fallout Shelters Inc. (National) and Michael L. Weissman, Neal A. Helberg and Donald S. Pine, its directors. Plaintiff sought to enforce statutory liability against the directors in seeking return of money paid by her to National pursuant to a written construction contract. Subsequently, plaintiff filed a second count as an amendment to the complaint. This count sought basically the same relief in chancery. It also prayed for appointment of a receiver for National and for other equitable relief. Count 2 was referred to a master in chancery who heard the evidence and filed a lengthy report. He recommended that judgment be entered in favor of plaintiff and against Weissman, Helberg and Pine for $3880 being the amount paid National; that plaintiff have judgment against defendants Helberg and Pine in the amount of $3880 for punitive damages; that his fees, in the amount of $2250 be assessed as costs and that plaintiff be allowed attorney's fees in the amount of $2600 and certain costs. The trial court approved the master's report and entered a decree in accordance with the recommendations thereof. All of the defendants appeal.

All contend that certain of the statutory causes of action against corporate directors may not be used by a creditor; and, further, that plaintiff was not a creditor of National so as to be entitled to notice of its dissolution. They further contend that the court erred in assessing punitive damages and attorney's fees. The defendant Weissman raises additional defenses, contending that he did not vote for or assent to the alleged violations of corporate law; that he was not negligent when National was dissolved and that the evidence fails to prove him guilty of conspiracy. The relevant facts will first be stated.

National was duly organized as a corporation under the law of Illinois on August 30, 1961. It had stated capital of $15,000 divided into 15,000 shares of par value of $1 per share. As its name would imply, the corporation was organized, among other things, to make contracts for and construct fallout shelters. Two stock certificates were issued, each for 7500 shares, with one in the name of Helberg and the other in the name of Pine. Weissman was and is a practicing attorney in Cook County. He had no financial interest of any kind in National but acted as its attorney in connection with its corporate affairs. The sum of $14,872.51 was deposited in a corporate bank account as National's initial capital. This contribution was made by Helberg and Pine. No contribution was made by Weissman. Helberg, Pine and Weissman were all directors of the

corporation. In addition, Helberg was president, Pine was treasurer and Weissman was secretary and registered agent.

On September 26, 1961, the capital of National was reduced by issuance of two checks, each in the amount of $5000, one payable to Helberg and another to Pine. The stubs show that these checks were issued for retirement of common stock. There were other previous withdrawals, including various salary items paid to Pine. These payments reduced the total corporate assets to $3574.78. On November 11, 1961, an additional amount of $2000 was paid to Helberg. At or about that time, the total assets of National were reduced to $58.09 carried in the bank account. Throughout the corporate existence, aside from the transaction with plaintiff, two deposits of $48 each were made to the corporate account.

The business affairs of the corporation were conducted in an incredibly loose manner. The checkbook constituted the sole and only accounting record. The bank records show that checks could be withdrawn on the joint signatures of Helberg and Pine. Attorney Weissman never had authority to sign checks. It does not appear that he ever at any time had knowledge of any of the financial transactions of National or of any of the withdrawals made by Helberg and Pine from the corporate bank account.

On November 13, 1961, National and plaintiff entered into a short typewritten contract of one page. Plaintiff was then approximately 75 years of age. National agreed to install a fallout shelter for plaintiff for $3880. Plaintiff paid the entire amount and this sum, evidenced by a check payable to National, was deposited in its bank account. This increased the total assets of National to $3938.09.

Approximately two weeks thereafter, corporate checks were issued to Helberg in the amount of $600 and to Pine in the amount of $400. On February 7, 1962, National issued a check to a company known as Educational Plans in the amount of $2750. This was purportedly a loan to the payee, which was jointly owned by Helberg and Pine. The loan was never repaid. These withdrawals left a nominal amount in the corporate treasury. The bank account was closed without further activity. It is clear that defendant Weissman was never informed of these withdrawals.

Apparently there was little activity by either side of the transaction until early in 1963. On February 27, 1963, National filed with the Secretary of State of Illinois a statement of intent to dissolve by voluntary consent of its shareholders. This form was prepared by attorney Weissman and was executed by him as secretary and by Helberg as president of National. No notice of the filing of this document was ever sent to plaintiff by any person. Weissman testified that he did not know of

plaintiff or her transaction with the remaining defendants until the filing of suit against him. There are no corporate resolutions pertaining in any manner to the transaction between National and plaintiff. Weissman testified that Helberg told him that National had not transacted any business prior to execution of the statement of intent to dissolve. Weissman did not question this statement and never requested an examination of the financial records of the corporation. Helberg and Pine both testified that they never had any conversation or communication with Weissman regarding the transaction with plaintiff. However, Helberg at one point contradicted himself, at least in part, and testified that he did tell Weissman that one shelter had been sold but not constructed.

On February 25, 1963, before filing the statement of intent to dissolve, attorney Weissman prepared and Helberg and Pine signed a unanimous consent of shareholders evidencing their intent to dissolve National and resolving that the shareholders agreed "* * * to make adequate provision for the full and complete discharge of all debts, obligations and liabilities of this corporation * * *."

On March 6, 1963, articles of dissolution of National were filed with the Secretary of State. This document recited that, "All debts, obligations and liabilities of the corporation have been paid and discharged, or that adequate provision has been made therefor." This document was also prepared by attorney Weissman and executed by him as secretary and Helberg as president.

On April 26, 1963, plaintiff's counsel wrote directly to Helberg. The letter stated that Pine had advised plaintiff's attorney on December 7, 1962, that construction of the shelter would commence after the spring thaw. This letter in effect demanded that the contract be performed or that plaintiff would "* * * have to reevaluate the question of your intent to complete the contract in accordance with its terms." On June 20, 1963, plaintiff's counsel wrote to an attorney (other than Weissman) who was then representing Helberg and Pine. This communication mentioned dissolution of the corporation. Plaintiff had never previously been advised of the dissolution. On January 16, 1964, plaintiff's counsel wrote to National in care of the attorney and demanded refund of plaintiff's money. Plaintiff's suit was filed on February 4, 1964.

We will first consider the merits of the relief granted plaintiff against defendants Helberg and Pine. We will preface this by stating that we have read the voluminous briefs submitted by counsel for these defendants as well as the many authorities therein cited. From this entire mass of argument and material, we cannot glean any sufficient legal or equitable reason to question the decree appealed from insofar as it found both Helberg and Pine personally liable to repay the amount due plain-

tiff. As the facts here show, these defendants stripped National of virtually its entire capital before their dealings with plaintiff. When plaintiff entered into the contract with National, the total assets of the corporation had been reduced to $58.09. After the deposit of plaintiff's funds in the bank account of National, these defendants took additional sums from the corporate bank account including a purported loan to a corporation which they jointly owned. It is virtually conceded by these defendants, under the compulsion of clear evidence, that these distributions were made by defendants for their own personal benefit. The diversion of these funds and then the dissolution of National without notice to plaintiff was a gross violation of several portions of the Illinois Business Corporation Act.

Defendants Helberg and Pine as directors of the corporation assented to and caused distribution of the assets of National to themselves after the transaction with plaintiff. At this time, National's net assets were less than its stated capital. Therefore, they were "* * * jointly and severally liable to the corporation for * * * the value of such assets * * *." (Ill. Rev. Stat. 1961, ch. 32, par. 157.42—1.) In addition, this distribution of assets of National to themselves rendered the corporation insolvent and reduced its net assets below its stated capital. Therefore, they were "* * * jointly and severally liable to the corporation for * * * the value of such assets * * *." (Ill. Rev. Stat. 1961, ch. 32, par. 157.42—2.) Furthermore, these defendants caused the making of a loan from National to another corporation over which they had control and joint ownership. This was, in effect, a loan to themselves. Therefore, they should be and are "* * * jointly and severally liable to the corporation for the amount of such loan until the repayment thereof." (Ill. Rev. Stat. 1961, ch. 32, par. 157.42—4.) The appropriation of these funds constituted fraudulent and oppressive conduct by these defendants. Note *Ross v. 311 North Central Avenue Bldg. Corp.,* 130 Ill.App.2d 336, 264 N.E.2d 406, 413 and authorities therein cited.

■■■ Defendants Helberg and Pine contend that these sections of the statute above noted grant a remedy to the corporation only and not to plaintiff as a creditor. In situations of this type, where the corporation is insolvent, the necessary derivative action against culpable directors may be brought by the corporation itself or "* * * by its receiver or assignee." (*Precision Extrusions, Inc. v. Stewart,* 36 Ill.App.2d 30, 42, 183 N.E.2d 547 citing 3 Fletcher Cyclopedia Corporations, Sec. 1275, (Perm Ed).) In the case at bar, the second count of plaintiff's complaint prays for the appointment of a receiver. This could have been done by the trial court and the decree could have provided for payment to the receiver by Helberg and Pine of the amounts equitably due plaintiff.

However, since plaintiff appears, even at this late date, to be the only creditor of National, we believe that the trial court acted wisely to avoid the doing of useless acts, abhorrent to equity, by providing for payment directly to plaintiff.

Alternatively, the statute also provides that where directors fail to mail to a known creditor of the corporation a notice of the filing of a statement of intent to dissolve, these directors are "*   *   * jointly and severally liable to such creditor for all loss and damage occasioned thereby." (Ill. Rev. Stat. 1961, ch. 32, par. 157.42—6.) In responding to plaintiff's contention based upon this portion of the statute, defendants Helberg and Pine assert that plaintiff was not a creditor of National.

■■   We find specifically that plaintiff is a creditor of National seeking payment of a liquidated debt within the meaning and purview of the pertinent statute. This conclusion is amply supported by *People v. Parker*, 30 Ill.2d 486, 197 N.E.2d 30. There, the Supreme Court upheld statutory personal liability of a director of a dissolved corporation for unpaid personal property taxes where no notice of the dissolution was given to the county treasurer. The taxes there involved had merely been levied and had not been reduced to judgment. The Supreme Court virtually assumed that the People of Illinois were a creditor entitled to notice of corporate dissolution. In the case at bar, the precise amount which plaintiff paid to National is fixed by the evidence. Prior to the filing of suit, plaintiff made written demand for restitution of this amount. In count 2 of her complaint, plaintiff prays a judgment confirming her rescission of the contract and for return of moneys paid to National. Therefore, authorities cited by these defendants, such as *Hart-Parr Co. v. Pratt* (7th cir. 1921), 272 F. 471, are not applicable. There is no legal requirement that plaintiff bring this type of suit as a judgment creditor.

This conclusion is further reinforced by examination of the printed forms provided by the Secretary of State of Illinois as articles of dissolution. These forms state specifically that, "All debts, obligations and liabilities of the corporation have been paid and discharged, or that adequate provision has been made therefor." This statement was sworn to by the defendant Helberg. In this regard, we reject the contention of these defendants that they were prepared to construct the shelter and to raise the necessary funds for this purpose. This was no longer an executory contract. Plaintiff had rescinded and demanded return of the moneys paid. We, therefore, approve the finding and conclusion of the trial court that plaintiff was a creditor of National and that she was entitled to the entry of judgment against defendants Helberg and Pine.

■■   The decree appealed from also awarded attorney's fees to plaintiff in the amount of $2600 together with costs advanced by plaintiff in the

amount of $609.42. Since no point is argued by defendants Helberg and Pine concerning this portion of the decree, we are constrained to approve it. (Supreme Court Rule 341(e) (7).) Furthermore, assessment of attorney's fees in this case was proper as regards defendants Helberg and Pine because their denials were untrue, without reasonable cause and patently not in good faith. (Ill. Rev. Stat. 1969, ch. 110, par. 41.) The decree is, therefore, approved insofar as it assesses attorney's fees and costs against the defendants Helberg and Pine.

The decree also allowed the sum of $3880 against defendants Helberg and Pine as punitive damages. We do not mean to approve in any manner the conduct of Helberg and Pine. However, we cannot overlook the fact that plaintiff's cause of action is essentially contractual. Punitive damages are generally not permitted in contract actions. (*Ash v. Barrett,* 1 Ill.App.3d 414, 419, 274 N.E.2d 149.) In addition, we do not believe that punitive damages should be allowed in addition to attorney's fees and costs in this case. (See *Russow v. Bobola,* 2 Ill.App.3d 837, 843, 277 N.E.2d 769.) Insofar as the decree appealed from grants punitive damages against defendants Helberg and Pine, it is reversed.

We will next consider the liability of defendant Michael L. Weissman. Many potent factors operate in his favor. He had no knowledge whatsoever regarding any financial affairs of National and no knowledge regarding plaintiff or her transaction. In this regard, we accept the testimony of Pine and of attorney Weissman rather than the contrary and self-contradicting testimony of Helberg. We are also impressed by the fact that Weissman never signed corporate checks and never received any part of the assets of National which were siphoned off and appropriated without his knowledge by his fellow directors. In our opinion, the evidence clearly shows that these acts by the remaining directors were not done with the affirmative vote or with the assent of attorney Weissman as required by the applicable statutes above cited. It has already been pointed out that Weissman had no knowledge of the existence of plaintiff's claim against National when he prepared the necessary legal documents.

To hold Weissman liable with the remaining two directors, in effect, requires that he be found guilty of a civil conspiracy. In such case, proof by clear and convincing evidence would be requisite to a finding against him. (*Illinois Rockford Corp. v. Kulp,* 88 Ill.App.2d 458, 476, 232 N.E.2d 190.) No such quantum of proof is apparent here. In this regard, we reject plaintiff's contention that the record shows acquiescence by attorney Weissman in the conduct of his fellow directors or negligence on his part in failing to discover their misconduct. There can be no acquiescence in the conduct of other persons without knowledge thereof.

Plaintiff's basic theory as expressed in count 2 of her complaint is not negligence but intentional violation of the statutes in question.

■■ Plaintiff argues that the report of the master when approved by the decree of the trial court should have the same binding force as a jury verdict. It is true that this principle appears in a number of Illinois decisions. (See *La Salle Nat. Bank v. Village of Skokie*, 62 Ill.App.2d 82, 89, 210 N.E.2d 236.) It is also true that in every chancery case, even after the report of the master has been approved by a decree, the facts are always open for consideration by a reviewing court. The question which this record submits to us is: "Was the decree rendered by the court a proper one under the law and the evidence?" (*Babray v. Carlino*, 2 Ill.App.3d 241, 244, 276 N.E.2d 435, leave to appeal denied by Supreme Court, March Term 1972, citing *Uksas v. Zelensky*, 21 Ill.2d 303, 311.) The above analysis shows amply that in the case at bar the decree rendered against the attorney Michael L. Weissman is not equitably proper. Consequently, insofar as the decree seeks to impose liability of any kind against the defendant Michael L. Weissman, it is reversed.

This record illustrates the possible liability to which members of the bar may be subjected when they chose to act as directors or officers of corporations organized for their clients. The glamour, and less frequently the financial return, which may follow from being a corporate official often conceal a situation which may turn out to be fraught with danger for the honest and well intentioned but unwary lawyer. Attorney Weissman attempted to save time in the execution of corporate forms. He should have politely required his clients to furnish other persons to act in the capacity of corporate officers and directors. In this regard, we respectfully direct the attention of members of the bar to the current statute, effective in 1963, which permits the organization of a corporation with two directors where all of its shares are owned by one or two persons. Ill. Rev. Stat. 1969, ch. 32, par. 157.34.

The provisions of the decree appealed from which award judgment in favor of plaintiff Dorothy Sears and against defendants Neal A. Helberg and Donald S. Pine in the amount of $3880; judgment in favor of plaintiff and against said defendants for master's fees in the amount of $2250 and in favor of plaintiff's attorneys for their fees in the amount of $2600 and for costs advanced in the amount of $609.42 are affirmed. The portions of the decree which allow punitive damages to plaintiff against defendants Helberg and Pine are reversed. Insofar as the decree assesses any liability of any kind against defendant Michael L. Weissman, it is reversed.

Decree affirmed in part; reversed in part.

BURKE and LYONS, JJ., concur.