CRAIG A. ZEILENGA, Plaintiff-Appellant, *v.* STELLE INDUSTRIES, INC., *et al.*, Defendants-Appellees.

Fourth District   No. 14397

Opinion filed September 26, 1977.—Rehearing denied October 27, 1977.

Walter L. Stodd, of Pontiac, for appellant.

Ronald V. Hirst, of Strock & Hirst, of Pontiac, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

Fraud case.

Jury trial.

Verdict for plaintiff.

Judgment *n.o.v.*

We affirm.

Craig Zeilenga brought suit against Stelle Industries, Inc. and The Stelle Group alleging fraud and the jury returned a verdict for plaintiff in the amount of $10,000 plus $25,000 punitive damages. The trial judge, however, granted defendants' motion for a judgment notwithstanding the verdict.

The facts are these:

The Stelle Group was founded by Richard Kieninger in 1963 and organized as an Illinois not-for-profit corporation. It is an organization bound together by a philosophy espoused in a book entitled *The Ultimate Frontier* which functions as a bible for the group members and must be read and its precepts accepted by applicants to The Stelle Group before membership is granted. The major endeavors of The Stelle Group are the formation of Stelle Industries and the building of Stelle City. The former comprises a manufacturing concern in Ford County, Illinois, whereas the

latter is a community also located in Ford County in which The Stelle Group members can live and work.

Plaintiff came into contact with The Stelle Group in October 1971, and, after attending orientation sessions and reading *The Ultimate Frontier*, was accepted as an "associate participant." Before becoming an "associate participant," Zeilenga had also read a pamphlet entitled *Stelle, A City For Tomorrow*, and was cognizant that he would not be accorded full membership status in The Stelle Group until he had spent a six-month associate period and had signed the "Social Contract."

After becoming an associate member, plaintiff—a tool and die maker—began spending his weekends at Stelle City and working on construction of the city. The following year he quit working on the construction of Stelle City and instead began working two jobs and donating the entire pay from one of these jobs to The Stelle Group as a tithe. In return for donating his wages, he was given "priority points" which were to be used to determine housing priority at the Stelle City. Plaintiff contends that his motive in donating his time and money to defendants was in an effort to achieve priority in the housing accommodations, although he never expected to have the money returned or to be compensated for his time.

At the end of his six-month associate period with The Stelle Group, Zeilenga received a letter from Gail Kieninger (the sole member of the "admissions committee") informing him that the associate period was over and requesting that he submit an essay to the "admissions committee" articulating what he had learned as an associate and what he believed The Stelle Group was trying to teach. The letter also informed plaintiff that after the essay was submitted, he would be interviewed, his status as an associate would be reviewed, and consideration would then be given to granting him full membership. Despite this letter, and a subsequent letter of the same tenor, plaintiff did not submit an essay. Although his six-month associate period was over, his affiliation with The Stelle Group was not terminated until 2½ years later. During this time, he quit his two jobs and started his own tool and die business at Stelle City. Furthermore, he bought 33 shares of stock at $100 per share in Stelle Industries at the solicitation of Richard Kieninger and endorsed these shares over to the voting trustee (Richard Kieninger).

On May 12, 1975, plaintiff received a letter from Gail Kieninger terminating his participation with the group. That letter detailed no reason for the termination, nor did The Stelle Group termination procedure contain any provision for appeal by disassociated participants. Plaintiff then commenced this action demanding return of his donations, compensation for his time, and punitive damages for the defendants' alleged fraud.

On appeal, Zeilenga contends that the trial judge erred when he set

aside the jury verdict and entered judgment *n.o.v.* for defendants. Such judgments should be entered only when all of the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) This is the standard that the trial judge applied and we find that he correctly applied that standard to the facts of this case. We affirm.

■■■ There was no actual fraud in the instant case. In order to prove actual fraud it is incumbent upon plaintiff to establish that defendants' misrepresentation was an untrue statement of material fact, made with knowledge of its falsity for the purpose of influencing the other party who relied upon the statement. (*Metropolitan Bank & Trust Co. v. Oliver* (1972), 4 Ill. App. 3d 975, 283 N.E.2d 62; see *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89.) Here, there was absolutely no direct proof that any of defendants' agents ever told plaintiff that he was assured of getting a house at Stelle City or would definitely become a member of The Stelle Group.

Although no actual fraud is present, however, this does not necessarily preclude a finding of constructive fraud. Plaintiff argues that there was a fiduciary relationship between the parties and that defendants breached this fiduciary duty, thereby committing constructive fraud. Constructive fraud is presumed from the circumstances and condition of the immediate parties to the transaction. *Winger v. Chicago City Bank & Trust Co.* (1946), 394 Ill. 94, 67 N.E.2d 265.

■■■ We are concerned, therefore, with the relationship of the parties and whether a fiduciary relationship either by fact, or law, existed between them. Once a fiduciary relationship has been established, the law presumes that any transaction between the parties in which the dominant party has profited is fraudulent—although this presumption is not conclusive and may be rebutted by clear and convincing proof. (*Wold v. Wold* (1976), 43 Ill. App. 3d 773, 357 N.E.2d 627; *Ciolek v. Jaskiewicz* (1976), 38 Ill. App. 3d 822, 349 N.E.2d 914.) Factors to be considered in determining whether a fiduciary relationship exists as a factual matter include degree of kinship, disparity of age, health, mental condition, and the extent to which the allegedly servient party entrusts the handling of his business and financial affairs to the other and reposes faith and confidence in the dominant party. *Wold; McCartney v. McCartney* (1956), 8 Ill. 2d 494, 134 N.E.2d 789.

■■ There are no facts in the instant case to support a fiduciary relationship since we deem it apparent that plaintiff was acting as an independent and not as a servient party. He joined The Stelle Group only after reading the appropriate books, attending the orientation meetings, and deciding that The Stelle Group offered an opportunity for his tool and

die trade and that such a trade was of importance to the development of Stelle City. Furthermore, Zeilenga failed to submit an essay to defendants even though he was asked on two different occasions to do so and in spite of the fact that such an essay was a prerequisite for full membership status. A final indication of plaintiff's independence is his own admission that he had no respect for defendants' authority. In sum, plaintiff was not a servient party blindly obeying defendants' orders but was, indeed, an independent and self-motivated individual seeking to broaden his horizons both spiritually and materially.

■■■ Although the factual context of this case does not indicate that a fiduciary relationship existed, such a relationship will be presumed as a matter of law in certain circumstances. (See *Wold.*) In the instant case, the defendants' agent, Richard Kieninger, occupied many different roles in relation to plaintiff, including philosophical and religious leader, president of the group, trustee of the voting trust, and fellow shareholder. The relationships we focus upon are those of trustee and fellow shareholder. As trustee of the voting trust, Richard Kieninger was clearly in a fiduciary relationship to each of the beneficial owners of stock. (*Olson v. Rossetter* (1947), 330 Ill. App. 304, 71 N.E.2d 556.) Furthermore, the Stelle Group profited from its dealings with plaintiff since its agent, Kieninger, as trustee under the voting trust agreement, could purchase plaintiff's stock for $1 per share (as opposed to the $100 it cost plaintiff) at any time plaintiff ceased to be affiliated with the Group. The stock could then be purchased by the remaining shareholders at the reduced value. But any presumption that arose by the nature of the relationship between plaintiff and defendants was rebutted because a repurchase of the shares was conducted strictly in accordance with the agreement between plaintiff and defendants. Defendants had made full disclosure to plaintiff of the terms of the agreement. Plaintiff was fully aware of both the purchase rights that were in existence and of the consequences that would occur if he were terminated as a Stelle Group participant. Furthermore, Kieninger's letter soliciting plaintiff to purchase stock stated that "stock purchases are essentially gifts to Stelle."

*Ergo,* no constructive fraud. Plaintiff's donations of time and money to The Stelle Group were independent acts calculated to earn priority points *in futuro*. However, the future was a speculative matter at The Stelle Group and there is no proof that defendants' agents at any time told plaintiff that he would ever get a house or achieve full membership with the group. Plaintiff's purchase of stock raises slightly different questions but it is clear he was fully apprised of the circumstances attendant to the stock purchase and was not misled as to possible consequences.

■ We affirm the trial judge's decision granting defendants' motion for judgment notwithstanding the verdict since all the evidence, when

viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors defendants that no contrary verdict based on that evidence could ever stand.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.