VANCE PEARSON, INC., Plaintiff-Appellee, *v.* ROBERT D. ALEXANDER, d/b/a Peoria Scale Service, Defendant-Appellant.

Fourth District   No. 15933

Opinion filed August 6, 1980.

WEBBER, J., concurring in part and dissenting in part.

Moehle, Reardon, Smith & Day, Ltd., of Washington (Bradley W. Swearingen, of counsel), for appellant.

Gilbert Saikley, of Saikley, Garrison & Associates, of Danville, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant, Robert D. Alexander, appeals a judgment of the circuit court of Vermilion County entered after a bench trial awarding plaintiff, Vance Pearson, Inc., compensatory damages in the sum of $6,665.56 for breach of contract and punitive damages in an additional sum of $10,000 for fraud and deceit in the inducement for plaintiff's making the contract. We reverse the judgment for compensatory damages and remand the case to the trial court for a new trial only as to the question of the amount of the compensatory damages. We affirm the judgment for punitive damages.

The suit arose from a contract reduced to a written memorandum

signed by the parties on August 2, 1977. By its terms defendant agreed to install a set of truck scales on a farm owned by plaintiff and located north of Ridgefarm in Vermilion County. The document stated that the work would be completed by September 15, 1977, but it was not completed until many months later. The original complaint was filed October 11, 1978. The case was tried at bench upon an amended complaint charging the breach of the contract in count I and the fraud and deceit in count II.

Defendant does not dispute that, as alleged in count I, he breached the contract by failure to timely complete the installation. He asserts that the damages awarded were not proved. Count II, which charged fraud and deceit, alleged that defendant made the promise to complete the installation by September 15, 1977, when he "knew, or should have reasonably known that said representation was false and that he would be unable to complete the installation by" that date. Further allegations stated that defendant made the promise intending for it to be relied upon and that plaintiff did so to its detriment. Count II asked only for punitive damages. Defendant maintains that as to count II the court erred in admitting evidence of other transactions in which he had been involved and that the evidence did not prove him guilty of fraud and deceit. The heart of his latter assertion is his contention that a promise made by the promisor without intention that it be performed does not constitute a misrepresentation upon which a determination of fraud may be based. He also maintains that, in any event, an award of punitive damages was improper.

Plaintiff's evidence in support of its claim for compensatory damages concerned those expenses incurred in transporting harvested grain from its various farms to a scale in Ridgefarm for weighing prior to transporting it to a storage facility on the location where the scales were to be installed. Defendant asserts that no such damages were in the contemplation of the parties, but we find the circumstantial evidence presented to be sufficient to show that defendant understood that his failure to install the scales by September 15, 1977, would injure plaintiff. Obviously, plaintiff had a purpose for having the scales installed. Thus defendant must have known that in plaintiff's method of farming it needed to weigh its grain before it was taken to an elevator for sale. Defendant admitted as much when he testified to knowing that plaintiff would have to weigh its grain elsewhere until the scale was installed. It was also obvious that the scales would have to have been installed by about September 15, 1977, for plaintiff to use those scales for weighing both his 1977 soybean and corn harvests. Vance Pearson, principal in the plaintiff corporation bearing his name, testified that he probably explained the extent of plaintiff's substantial farming operation to defendant.

Allowance to plaintiff for expenses incurred in additional trucking of grain resulting from defendant's breach of the contract would be analogous to that which would be recoverable by a buyer for a seller's breach of warranty upon a sale of movable goods under the terms of section 2—715(2)(a) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 2—715(2)(a)), which allows recovery for:

> "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise."

Testimony showed that the scale was to be built at an area three-fourths of a mile north of Ridgefarm on one of plaintiff's farms. Its other farms were east, west or south of Ridgefarm with one being 12 miles to the south. When grain from most of the farms was brought to the storage facility north of Ridgefarm it would have had to be transported through Ridgefarm. The weighing facility used in Ridgefarm was about one-quarter of a mile east of the north-south highway through the town. Thus much of the grain would have been shipped in trucks that would have had to travel only about one-half mile out of the way because of the unavailability of the scale. The grain from the north farm, however, would have had to be transported an additional two miles in order to use the Ridgefarm facility.

As the evidence showed that the scales were unavailable for both the 1977 and 1978 crop years and that some 600 truck loads of grain were taken to the Ridgefarm scale, there was obviously some substantial additional expense incurred by plaintiff because of the contract breach. But we agree with defendant that it was not adequately established to be as much as the $6,665.56 awarded. The evidence presented no breakdown as to how much grain came from each farm. A trucker testified that he charged 5 cents a bushel to haul grain a distance of 2 to 2½ miles, but he did not state that to be the going rate. Vance Pearson testified that in his opinion $2,000 of the salary paid him by plaintiff corporation in 1977 and $4,000 of his salary for 1978 was for performing the additional hauling required because of the contract breach, but the lack of data upon which he based his opinion and the self-serving nature of the testimony give it extremely small probative value as to the amount of plaintiff's damages.

■■ In reversing the award of $6,665.56 compensatory damages we are not ruling that some actual damages are not recoverable. Rather, we are ruling that at least some damages are recoverable and remanding for a determination of that amount. Accordingly, the award of punitive damages is not vitiated by the rule that actual damages are necessary to support punitive damages. *Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 300 N.E.2d 616.

We, thus, turn our attention to the finding as to count II upon which the punitive damage award was based. The elements of the action for fraud and deceit were set forth by Mr. Justice Mills in *Zeilenga v. Stelle Industries, Inc.* (1977), 52 Ill. App. 3d 753, 757, 367 N.E.2d 1347, 1349, in the following statement:

> "In order to prove actual fraud it is incumbent upon plaintiff to establish that defendants' misrepresentation was an untrue statement of material fact, made with knowledge of its falsity for the purpose of influencing the other party who relied upon the statement."

As we have mentioned, plaintiff maintains that defendant's promise to install the scales by September 15, 1977, constituted a misrepresentation under the facts of the case.

Defendant admitted in his testimony that when he agreed to the September 15, 1977, completion date, he knew that a reasonable likelihood that he could not meet that date existed. The trial court could have determined that no unexpected event occurred which prevented defendant from meeting the date. Defendant testified that the existence of some storage facilities at the sight impeded his work, but Vance Pearson's testimony refuted that, and the court could have believed Mr. Pearson. Testimony was also presented by two persons who had made similar contracts with defendant for scale installations in the two years prior to the instant contract. Each testified that their contracts had a definite completion date which defendant grossly missed, and each testified to great difficulty in getting defendant to do the work. There was thus clear and convincing evidence from which the trial court could have concluded that defendant agreed to the completion date knowing that he could not meet it and therefore not intending to comply with it. That court could also have found that (1) defendant made the promise with the intent of deceiving plaintiff into agreeing to the contract, and making the shown down payment of $8,000, and (2) plaintiff was deceived by the promise and relied thereon to its detriment.

■■ Defendant asserts that admission and consideration of the evidence of even the two transactions was error, citing *Brown v. Brown* (1978), 62 Ill. App. 3d 328, 379 N.E.2d 634. There one brother sued another brother for breach of fiduciary relationship and fraud in purchasing a house from their mother. The trial court's refusal to admit evidence of a prior judgment against the defendant brother which did not clearly appear to have been predicated on fraud was held not to be error. However, that opinion stated that the evidence would have been admissible (1) if fraudulent acts shown by the judgment had been part of a scheme common to that of the case before it, or (2) to show knowledge or intent. Here, the other two transactions showed defendant making promises to

make installations which he did not, and apparently could not, keep. The *modus operandi* there was common to that here. Evidence of the two transactions also showed defendant's likely intent here and bore upon his knowledge that performance on time would be difficult. They were admissible for these reasons. *Smith v. National Life & Accident Ins. Co.* (1936), 286 Ill. App. 566, 4 N.E.2d 128; *Blalock v. Randall* (1875), 76 Ill. 224.

The trial court also heard testimony concerning other transactions involving defendant, but later struck that testimony. Admission of the testimony concerning the two transactions considered was proper.

Professor Prosser has stated the general rule in this country on the question of whether a promise of future conduct can be a misrepresentation to be as follows:

"On the other hand statements of intention, whether of the speaker himself or of another usually are regarded as statements of fact. 'The state of a man's mind,' said Lord Bowen in 1882, 'is as much a fact as the state of his digestion;' and this catch phrase has been repeated ever since in explanation of the distinction between prediction and intention. But any statement of an opinion is at least as much an assertion of the fact of a present state of mind; and the justification of the distinction must be that the intention is regarded as a material fact, by which the adverse party may reasonably be expected to govern his conduct. A promise, which carries an implied representation that there is a present intention to cary it out, is recognized everywhere as a proper basis for reliance; and assertions of intention which are not promissory in form may be, although they are not always, quite as material and persuasive. All but a few courts regard a mistatement of a present intention as a misrepresentation of a material fact; and a promise made without the intent to perform it is held to be a sufficient basis for an action of deceit, or for restitution or other equitable relief. A very common illustration is the purchase of goods with a preconceived intention not to pay for them. The door is thus opened to a tort remedy which may offer important advantages over any action on the contract itself, including the possibility of the recovery of specific goods surrendered in the course of the transaction." Prosser, Torts §109, at 728-29 (4th ed. 1971). See Restatement (Second) of Torts §544 (1977).

In a footnote to the foregoing, Prosser indicates that Illinois has rejected the general rule. (Prosser, §109, at 729 n. 90.) Numerous cases have done so. In *Brodsky v. Frank* (1930), 342 Ill. 110, 173 N.E. 775, a plaintiff's claim that corporate shareholders had promised, without intent to perform, to convey in the future certain shares of stock to him if he

conveyed certain assets to the corporation was held not to be a misrepresentation giving rise to fraud. Similar holdings have recently been made in *Zaborowski v. Hoffman Rosner Corp.* (1976), 43 Ill. App. 3d 21, 356 N.E.2d 653, and *Metropolitan Sanitary District v. Pontarelli & Sons, Inc.* (1972), 7 Ill. App. 3d 829, 288 N.E.2d 905. In *Zaborowski* an allegation that a developer's fraudulent representation that property it owned would be developed in a certain way, made in order to induce the plaintiff to buy other nearby property from the developer and causing the plaintiff to purchase the property in reliance thereon to his detriment, was held to fail to allege fraud.

In *Roda v. Berko* (1948), 401 Ill. 335, 81 N.E.2d 912, the trial court dismissed a complaint seeking to set aside a deed on grounds of fraud. It alleged that the grantor was an elderly, ill woman who could not read or write English and that the grantee had (1) represented to her that the property would be used to build a factory which would enhance the value of her nearby land when, actually, he intended to use it for a junkyard, (2) failed to tell her that the deed contained no condition causing the property to revert to her if no factory was erected thereon, and (3) promised to reconvey to her in three months if no factory was then erected when he had no intention of making such reconveyance. The complaint also alleged many representations made by the grantee to the grantor that she could trust him. The supreme court deemed the complaint to state a cause of action.

The opinion recognized the Illinois rule that a promise to perform an act accompanied by an intention not to perform was not a false representation upon which a fraud charge could ordinarily be based, but stated that an exception to that rule existed when "the false promise or representation of intention or of future conduct is the scheme or device to accomplish the fraud and thereby cheat and defraud another of his property." (401 Ill. 2d 335, 340, 81 N.E.2d 912, 915.) The court considered the case to be different from cases cited in support of the rule, because in those the promise or representation had not been shown to be a "deliberate fraud by which a party had been induced to act to his damage, and in none of them was the existence of the fraud relied on shown by anything other than the broken promise." 401 Ill. 2d 335, 341, 81 N.E.2d 912, 915.

Subsequent to *Roda*, the supreme court has held a promise made without intent to perform to be a misrepresentation in *Willis v. Atkins* (1952), 412 Ill. 2d 245, 106 N.E.2d 370, and *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634. In *Atkins* fraud was shown when a man had obtained property from a woman through (1) promising to marry her without intending to keep the promise, and (2) over the years otherwise gaining her confidence and favor by posing as a person

interested in her welfare. In *Steinberg*, a complaint alleged that a medical school had promised in a catalog that applicants would be evaluated and selected on the basis of their merit when, in fact, the school intended to make the determination upon monetary contributions made by or on behalf of them. The court stated:

> "We concede the general rule denies recovery for fraud based on a false representation of intention or future conduct, but there is a recognized exception where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud. [Citations.]" 69 Ill. 2d 320, 334, 371 N.E.2d 634, 641.

Distinguishing between the general rule in Illinois that a promise of future conduct made without intention to perform is not misrepresentation and the exception to the rule which makes such a promise a misrepresentation if it is the scheme to accomplish a fraud is not easy. As fraud occurs when a misrepresentation is made with intent to induce a victim to rely thereon and a victim is deceived and relies thereon to his detriment, such misrepresentations are ordinarily the schemes by which the victim is defrauded regardless of whether the misrepresentation is as to the declarant's future intent or otherwise. Thus it would seem that the exception tends to engulf and devour much of the general rule and lessen any disparity between the Illinois rule and the majority rule as explained by Prosser.

As we have indicated, we deem the evidence sufficient for the trial court to have determined that defendant made the promise of performance by September 15, 1977, not intending to keep the promise but intending for plaintiff to rely on it and that plaintiff relied upon it to its detriment. If so, the false promise would have been an intended scheme to defraud plaintiff and would be actionable under the rule stated in *Steinberg*, the most recent supreme court pronouncement on the issue.

■■ Defendant has argued that because plaintiff permitted defendant to complete the contract, it has waived any cause of action for fraud under the theory of *Bulley & Andrews, Inc. v. Symons Corp.* (1975), 25 Ill. App. 3d 696, 323 N.E.2d 806, and a statement in *Eisenberg v. Goldstein* (1963), 29 Ill. 2d 617, 195 N.E.2d 184, *cert. denied* (1964), 377 U.S. 964, 12 L. Ed. 2d 735, 84 S. Ct. 1645. Defendant has been denied leave by this court to amend his answer to plead waiver. Even if amendment had been allowed, waiver would not exist here because rather than seeking to rescind the contract as in the cited cases, plaintiff wishes to stand by the contract after discovery of the fraud. Under such circumstances it may seek damages. *Allen v. Henn* (1902), 197 Ill. 486, 64 N.E. 250.

■■ The trial court's finding of fraud and deceit was supported by the evidence and was proper.

Lastly, defendant contends that the fraud was not sufficiently gross to justify an award of punitive damages. However, not only was there evidence that defendant had here defrauded plaintiff by making a promise of performance that he did not intend to keep but that he did this after being aware of the damage to others that had occurred from similar promises to other victims.

For the reasons stated, all portions of the judgments entered are affirmed except that the award of compensatory damages is reversed and the case is remanded to the circuit court of Vermilion County for a new trial on the determination of the amount of compensatory damages.

Affirmed in part, reversed in part, and remanded.

CRAVEN, J., concurs.

Mr. JUSTICE WEBBER, concurring in part and dissenting in part:

I concur in the remandment for a new trial on the subject of ordinary damages, although I do so on far different grounds from those of my colleagues in the majority. I most vehemently dissent from the proposition that a charge of ordinary fraud will support a claim for punitive damages.

The majority apparently holds that the ordinary damages were excessive, but no reasons are assigned other than generalizations as to the purported inadequacy of plaintiff's evidence. There is no indication that the evidence will be of any better quality on retrial. However, since defendant has admitted a breach of the contract, plaintiff is entitled to at least nominal damages.

I concur in the reversal of the ordinary damage award only because I believe that the trial judge, who sat in this case without a jury, showed prejudice and passion in the award of punitive damages and in the posture of this case such passion and prejudice cannot be disentangled from the award of ordinary damages.

In *Bumblauskas v. South Suburban Safeway Lines, Inc.* (1969), 110 Ill. App. 2d 52, 60, 249 N.E.2d 143, 147, the court said: "The question of damages is one for the trial judge in a nonjury trial and his decision will not be upset unless it is so excessive as to indicate passion or prejudice on his part."

In *Queen v. Behm* (1978), 58 Ill. App. 3d 253, 255, 373 N.E.2d 1382, 1383, the court said: "The allowance of punitive damages is a matter within the trial court's discretion to determine, and such a determination will not be disturbed in the absence of an abuse of that discretion."

Courts in Illinois have struggled with the question of punitive damages for many years. In an early case the supreme court said: "° ° ° [T]o authorize the giving of exemplary or vindictive damages, either

malice, violence, oppression or wanton recklessness must mingle in the controversy. The act complained of must partake of a criminal or wanton nature, else the amount sought to be recovered must be confined to compensation." *City of Chicago v. Martin* (1868), 49 Ill. 241, 245.

The *Martin* decision dealt with personal injuries, and it is in this context that the greater number of punitive damage claims are made. However, as recently as 1973 there is found a firm echo of the language in *Martin* in a breach of contract case: "This rule [denial of punitive damages in a breach of contract case] does not obtain, however, in those exceptional cases where the breach amounts to an independent, willful tort, in which event exemplary damages may be recovered under *proper allegations* of malice, wantonness, or oppression." *Wallace v. Prudential Ins. Co.* (1973), 12 Ill. App. 3d 623, 629-30, 299 N.E.2d 344, 349.

Two recent cases have stated flatly that punitive damages are not recoverable in a breach of contract action in Illinois. (*Ash v. Barrett* (1971), 1 Ill. App. 3d 414, 274 N.E.2d 149; *Alsip Homebuilders, Inc. v. Shusta* (1972), 6 Ill. App. 3d 65, 284 N.E.2d 509.) In the latter case the court said:

> "The theory behind this rule rests upon a distinction drawn between compensation and punishment. If the general purpose underlying the law of damages is to promote security and prevent disorder, as Corbin points out, and breaches of contract do not cause as much resentment of other physical or mental discomfort as do wrongs called torts or crimes, then the remedies needed to prevent breaches of contract and satisfy the injured party are not as severe as those needed to punish the tort feasor or criminal." 6 Ill. App. 3d 65, 69, 284 N.E.2d 509, 512.

It has long been the rule in Illinois that in a breach of contract suit the effort should be to restore the plaintiff to at least as good a position as he would have been, had the contract been performed, via the vehicle of money damages. In the contract action this is much easier to do than in tort where such intangibles as pain and suffering must be assessed. The result is that punitive damages in contract actions are sometimes permissible but are generally viewed with suspicion, if not downright hostility. The core element of pleading and proof in such a case is malice, violence, oppression or wanton wickedness. *Martin; Wallace.*

Some cases, including the case at bar, have attempted to evade the strictures of the rule by pleading fraud. However, simple fraud of the type cited in the majority opinion (*Zeilenga*) is insufficient. In *Laughlin v. Hopkinson* (1920), 292 Ill. 80, 126 N.E. 591, the court allowed punitive damages for what it called "willful, wanton, and grossly fraudulent misrepresentations." Wilful and wanton fraud is obviously something more than ordinary fraud and perhaps should even have a different name

since different elements compose it. In *Russow v. Bobola* (1972), 2 Ill. App. 3d 837, 277 N.E.2d 769, concerning the sale of a house, the court allowed allegations of ordinary fraud to stand but dismissed on motion a wilful and wanton count upon a finding that the facts did not support.

In *Sears v. Weissman* (1972), 6 Ill. App. 3d 827, 286 N.E.2d 777, the facts were similar but much more aggravated than those in the case at bar. Defendants had formed a corporation to build air-raid shelters. After looting the corporate treasury down to about $50 they entered into a contract with an elderly woman to build a shelter for her. They took her money, divided it and then did not perform. The court allowed only compensatory damages.

Another recent case, *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75, suggests that a disparity in bargaining power between the parties could support a punitive claim, although such was not allowed in that case.

Turning, then, to the case at bar, I find no pleading nor proof of malice, wantonness or oppression. If anything, there appears only simple fraud, and unlike the foregoing cases it does not go to the total performance of the contract, only to the time for performance. It is noteworthy that this contract consisted only of a verbal agreement followed by an ordinary invoice. There was no provision stating *in haec verba*, nor in substance, that time was of the essence, and there was some evidence tending to excuse late performance. The central fact is that there was performance, the scales were completed, albeit late, and the plaintiff got what he bargained for. There has been no claim of poor workmanship nor defect in materials. Any damage suffered by plaintiff was consequential and not direct. The majority opinion lays violent hands on a century of Illinois law.

If the majority opinion be correct, then any shoerepairman who promises to have the half-soles ready by "next Thursday" could be subject to punitive damage claim unless he delivers right on the dot.

I am therefore persuaded that the result in this case was reached because of the passion and prejudice of the trial court which infected the entire proceeding. I would therefore reverse the award of ordinary damages and remand for a new trial on those only. I would reverse without remand the award of punitive damages.