Raymond L. Sabath and Century Provision Co., an Illinois Corporation, Plaintiffs-Appellants, v. Morris Handler Co., an Illinois Corporation, Leonard Mansfield, Kenneth Schwartz and Arthur S. Yergin, Defendants-Appellees.

Gen. No. 52,684.

First Judicial District.

November 14, 1968.

Rehearing denied January 15, 1969.

Gale L. Marcus, of Chicago, for appellants.

Hoffman & Davis, of Chicago, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

The plaintiffs, Raymond L. Sabath and Century Provision Co., (Century), brought this suit against the defendants, Morris Handler Co. (Handler), and certain officers and directors thereof, to recover for damages alleged to have been sustained by reason of Handler's failure to obtain a driveway permit, as required by a construction contract. The complaint consisted of three counts: Count I alleged a breach of the written contract; Count II charged negligent and wilful and wanton conduct in the defendants' failure to obtain the permit and to advise the plaintiffs thereof; and Count III charged the defendants with fraud or deceit in this respect. The defendants moved to strike Counts I and III of the complaint and to dismiss Count II. The trial court struck all three counts, as barred by the applicable Statute of

Limitations, and dismissed the suit at plaintiffs' costs, without reaching other defects alleged in the defendants' motion, which could be corrected by amendments to the complaint.

The relevant facts, for the purposes of this appeal, are that Handler, in 1953, contracted to do certain construction and remodeling work for Century. The contract provided that the work was to be done pursuant to certain plans and specifications, which included the construction of a certain loading dock and driveway on the premises in question; that Handler obtain and pay for all permits required by the work, and that it notify the owner of any conflict with existing laws and regulations.

The work was completed in May of 1954, and Handler was paid at that time. Included among the additional charges submitted by Handler, was ". . . the sum of $500.00, which *was paid* for driveway permits." (Emphasis ours.) The plaintiffs continued to use the driveway, without interruption, until about July of 1961, at which time they learned—for the first time—that Handler had not in fact obtained the driveway permit as required by its contract and as it suggested had been done by its additional charge.

In either August or September of 1961, the plaintiffs notified Handler of their discovery in this respect, and Handler immediately took steps to obtain the necessary permit. These steps included an attempt to obtain the permit from the City of Chicago; the filing of a lawsuit against the City upon its refusal to issue such permit, and the obtaining of an order in such proceeding which permitted the continued use of the driveway during the pendency of that lawsuit; the successful prosecution of the suit in the trial court wherein an order was entered directing that a permit issue; the defense of the case on appeal to the Appellate Court by the City of Chicago;

and the attempt to have the matter heard by the Supreme Court upon the reversal of the trial court by the Appellate Court (56 Ill App2d 307, 206 NE2d 286).

It was not until October 13, 1965, that the Supreme Court denied Handler's petition for leave to appeal, and the plaintiffs were finally denied the use of the driveway. The case at bar was then commenced on June 13, 1967.

The defendants assert in their motion that Count I is barred by the 10-year Statute of Limitations (Ill Rev Stats 1967, c 83, par 17), and Counts II and III are both barred by the 5-year Statute (Ill Rev Stats 1967, c 83, par 16).

In Count I of the complaint, the plaintiffs contend, among other things, that the defendants, by their actions in pursuing the legal remedies seeking to obtain the driveway permit, either waived their right to assert the Statute of Limitations or should be estopped to assert such defense.

In our opinion, Handler's alleged breach of the contract occurred in 1954 when it purported to have completed the contract for the plaintiffs and received payment therefor. Thus, in 1961, when the plaintiffs discovered the breach, there still was ample time, under the applicable Statute of Limitations, to bring the breach of contract action asserted in Count I. But, during this time the defendants responded to the plaintiffs' demand to remedy their default and, at their own expenses, took the administrative and legal steps necessary in connection with obtaining the driveway permit, and the plaintiffs, at the defendants' request, halted the steps they had taken with the city to obtain the permit.

The defendants' acts, in response to the plaintiffs' discovery of the absence of a driveway permit, certainly manifested a recognition of their failure or default in the duty owed to the plaintiffs under the construction contract. This action also indicated to the plaintiffs that the

defendants intended to correct the wrong they had imposed upon them.

The defendants diligently pursued the course necessary toward obtaining the driveway permit. They obtained a temporary order permitting the use of the driveway, and they were successful in the trial court—at a time still within the Statute of Limitations period—in obtaining a final judgment that the driveway permit should issue. It was not until after the applicable limitation period had passed that the Appellate Court reversed that judgment, which reversal subsequently became final by a denial of the petitions for rehearing and for leave to appeal.

It does not seem reasonable, as a matter of law, that the plaintiffs, in order to avoid the bar of the Statute of Limitations, should have been compelled to file suit against the defendants during this period of time in which the defendants, by their conduct, recognized their duty and obligation to the plaintiffs and were doing the very things which the plaintiffs desired and requested. At the very least, the conduct to which we have referred would present a question of fact as to whether or not the defendants are estopped to assert the defense of the Statute of Limitations.

■■■■ One may by his conduct be estopped from raising the defense of the Statute of Limitations. Kinsey v. Thompson, 44 Ill App2d 304, 307, 194 NE2d 565 (1963) ; 34 Am Jur, Limitations of Actions, § 411; 53 CJS, Limitations of Actions, § 25. Estoppel may be raised as a bar to the Statute of Limitations the same as to other matters. It exists independent of those things set forth in the statute itself as causing its suspension. If a party's conduct has reasonably induced another to follow a course of action that otherwise would not have been followed, and which would be to the latter's detriment if he could not later repudiate such course of action, an estoppel will arise to prevent injustice or fraud. Dill v. Wid-

man, 413 Ill 448, 455, 456, 109 NE2d 765 (1953); Glad-Nan Corp. v. Henry's Drive-In, Inc., 29 Ill App2d 363, 371, 173 NE2d 521 (1961); 28 Am Jur2d, Estoppel and Waiver, § 35.

In Kreiling v. Northrup, 116 Ill App 448 (1904), affd 215 Ill 195, 74 NE 123 (1905), the Appellate Court set forth the areas in which the doctrine of estoppel may be asserted as a bar to the Statute of Limitations. There, a drainage district had been duly formed, and through error or inadvertence, a certain part of the land in the district was not adequately drained. The residents of the area petitioned the commissioners to modify the drainage system so as to adequately drain the land in the area. The commissioners, through proper meetings, passed resolutions which recognized the failure of the existing ditches to adequately drain the land within the district; they authorized the digging of additional ditches as recommended by their engineer, to accomplish the proper drainage of the land in question; they filed the necessary petition in the County Court upon which the court found the proposed work to be necessary and proper; and they levied an assessment on the land of the district to pay for such additional work.

The commissioners did not proceed with the additional work and a petition was filed by the residents of the area for a writ of mandamus to compel them to do so. The commissioners pleaded the Statute of Limitations as a bar to the issuance of the writ. At page 450, the court stated:

"As to . . . , the Statute of Limitations, . . . It is waived unless so relied upon and pleaded. In some cases, as to some matters, it may be avoided by a new promise. In some other cases, as to some other matters, it may be avoided by recognition of the right given and attempt to perform the duty required and imposed. Such recognition and attempt

waive and avoid the statute. The bar to a right to the payment of money may be removed by the act of part payment, however small, thereupon; the bar to a right to the performance of a duty may be removed by the act of part performance, by a beginning to perform. Words in some cases suffice; acts in some cases suffice."

The trial court awarded the writ of mandamus, as prayed, the Appellate Court affirmed the judgment of the trial court, and the Supreme Court affirmed the judgment of the Appellate Court.

In the case of Howard v. West Jersey & Seashore Railroad, 102 NJ Eq 517, 141 A 755 (1928), the court, in rejecting the defense of the Statute of Limitations, held that the Statute may be waived by express contract or by necessary implication, or its benefits lost by conduct invoking the established principles of estoppel in pais. At pages 757 and 758, the court stated:

"Also it should be noted that, while the doctrine of estoppel in pais rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application should be fraudulent in the strictly legal significance of that term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct; . . .

"While it cannot be said to be ordinarily any part of duty to apprise an adversary of his rights, it must be recognized that one cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought."

The defendants contend that neither "waiver" nor "estoppel" may be applied in the normal sense to the Statute of Limitations. They suggest that this Statute of Limitations was enacted for the benefit of the public generally and thus cannot be waived by an individual. We cannot wholly agree with this suggestion. The statute is in fact waived if it is not specifically pleaded as a defense. Clark Equipment Co. v. Schenck, 34 Ill App2d 249, 252, 180 NE2d 39 (1962); Ill Rev Stats 1967, c 110, par 43(4). Likewise, individuals may by their conduct waive their right to assert the statute as a defense. Kreiling v. Northrup, supra.

The defendants cite Reat v. Illinois Cent. R. Co., 47 Ill App2d 267, 197 NE2d 860 (1964) as setting forth the elements necessary to create an estoppel to the assertion of the Statute of Limitations as a defense. There the court, on pages 273 and 274, acknowledged that where one, by his representations or conduct, induces another to give him an advantage which would be against equity and good conscience for him to assert, he will not be permitted to avail himself of such advantage. The court went on to state that it is necessary, however, that the one asserting an estoppel against pleading the Statute of Limitations should have relied upon the acts or representations of the other party and, because of such reliance, refrained from commencing action within the limitation period; that the defendants' conduct must be such as tends to induce the plaintiffs to delay bringing the action; and that if the inducement for delay has ceased to operate sufficiently before the expiration of the limitation period so as to afford the plaintiffs ample time within such period to commence their action, then estoppel is not available.

We have no quarrel with these principles insofar as they are applicable to the case at bar in which it was the defendants' quest to obtain the driveway permit for the plaintiffs which raised the question of estoppel.

226

This began in the fall of 1961—prior to the running of the statute—and continued until the Supreme Court denied the petition for leave to appeal in October of 1965— after the limitation period had expired. If the defendants' acts did in fact give rise to estoppel, they did not cease to operate prior to the expiration of the limitation period.

 We conclude that an issue was properly made as to whether or not the defendants may assert the Statute of Limitations as to Count I, and that it was error to hold as a matter of law that the statute barred any action under Count I.

The plaintiffs have raised a further basis for reversing the trial court's dismissal of Count I under the Statute of Limitations: Section 16 (Ill Rev Stats 1965, c 83, par 17) which provides for a tolling of the statute if any payment or new promise in writing is made. The plaintiffs contend that the action followed by the defendants in seeking to obtain the permit was an acknowledgement of the obligations and a "payment" within the meaning of the statute, and that certain letters relating to that litigation were a new promise in writing. They also contend that there was no ultimate breach of the contract until the Supreme Court's denial of the petition for leave to appeal in 1965 and, thus, no accrual of the cause of action until that time.

While we do not wish to disregard these arguments, we do not agree with their conclusions as to these contentions; and in view of our determination on the issue of estoppel, we believe it would unduly and unnecessarily lengthen this opinion to repeat at length the plaintiffs' contentions as to these other matters.

In Counts II and III, the plaintiffs charge negligence and fraud, respectively, and they contend that they are not barred by the Statute of Limitations for the following reasons: (1) the doctrine of "blameless ignorance" is applicable; (2) the cause of action did not accrue until

1957 or 1962, and estoppel thereafter prevented the assertion of the statute, and (3) the defendants fraudulently concealed their wrong until such time that the doctrine of estoppel prevented the imposition of the Statute of Limitations.

■ The doctrine of "blameless ignorance" has been applied in some jurisdictions to prevent the commencement of the running of the Statute of Limitations until such time as one, acting with diligence, either becomes aware, or should become aware of the fact that a right has been invaded. In Mosby v. Michael Reese Hospital, 49 Ill App2d 336, 199 NE2d 633 (1964), this court recognized in a medical malpractice case that a plaintiff's justifiable ignorance of a cause of action does not delay the operation of the statute, except to the extent specifically provided for therein. Subsequently, the legislature amended the Statute of Limitations (Ill Rev Stats 1965, c 83, par 22.1) so as to delay the operation of the statute when one does not know or should not have known of a wrong done to him, but this provision has application only in a medical malpractice case and where a foreign substance is left within the body.

In Simoniz Co. v. J. Emil Anderson & Sons, Inc., 81 Ill App2d 428, 225 NE2d 161 (1967) a roof was defectively constructed in 1953. The plaintiff was not aware of the defect and apparently had no reason to be aware of it until 1962, when the roof collapsed. In rejecting the contention that it ought to apply the "know or ought to know" rule in such a case so as to extend the time at which the Statute of Limitations was to commence, the court stated that there was neither Illinois precedent nor an exception in the statute to justify the adoption of such a rule. It observed that, following the Mosby case, the legislature saw fit to adopt the "know or ought to know" rule only in certain medical malpractice cases, and it was not the function of the court to invade the

legislature's province by further extending the rule. We agree.

■ The date of the accrual of the plaintiffs' cause of action did not depend on the subsequent zoning amendment in 1957, the closing of the driveway in 1962, nor the Supreme Court's determination in 1965, any more than did the plaintiff's accrual of its cause of action in the Simoniz case depend on when the roof collapsed. If negligence existed, then Handler owed a duty to the plaintiffs in 1954 which it failed to perform, and there was a resulting injury at that time in the sense of a legal injury or an invasion of a right. From that moment on the plaintiffs were in jeopardy because of their use, possession and reliance on a driveway for which a permit had not issued, notwithstanding their contractual right to such a permit. The fact that the full extent of the damages may not then have been known or easily determined would not alter the fact that a cause of action existed at that time.

The plaintiffs also assert that the defendants fraudulently concealed the cause of action. Section 22 of the Limitations Act (Ill Rev Stats 1967, c 83, par 23) provides:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

The defendants refer to Skrodzki v. Sherman State Bank, 348 Ill 403, 181 NE 325 (1932) as indicating that there was no fraudulent concealment within the meaning of the Act. At page 407 the court pointed out that the concealment must be of an affirmative nature designed to prevent, and which does prevent, the discovery of the

cause of action. The fraud which is the basis for the cause of action either may, or may not, also constitute a fraudulent concealment of the cause of action, and the rule that the statute begins to run only from the discovery of the fraud does not apply where the party affected thereby might, with ordinary diligence, have discovered it.

By their statement which showed that they had paid for the driveway permit, the defendants represented to the plaintiffs that they had secured it. Whether the plaintiffs under the circumstances had a duty to check and verify the city records seems, at least, a question of fact to be determined from all of the relevant matters. Likewise, the representation made by the defendants constitutes, in our opinion, at the very least, a statement that would amount to a fraudulent concealment. If the defendants' conduct constituted a fraudulent concealment within the meaning of the Statute of Limitations, the statute then apparently would not commence to run until 1961. There then would remain the question of whether the defendants are barred by estoppel from asserting the Statute of Limitations as a defense to Counts II and III.

■■■ We are of the opinion that the facts raised by the plaintiffs relative to the issues of fraudulent concealment and estoppel are sufficient to establish that it was error for the trial court to dismiss Counts I, II and III on the defendants' motion. We do not intend, on the record before us, to determine these issues, but only to hold that it was error to dismiss said Counts on the defendants' motion which asserted that the causes of action set forth therein were barred by the Statute of Limitations as a matter of law.

In passing, we note that the defendants objected to the plaintiffs' filing of affidavits in opposition to their motion to strike. The motion to strike Counts I and III and to dismiss Count II was apparently filed under both sections 45 and 48 of the Civil Practice Act (Ill Rev

Stats 1967, c 110, pars 45 and 48). It asserted defects properly raised under section 45, and also alleged that relief is barred by sections 15 and 16 of the Statute of Limitations—a ground properly considered under section 48. Subparagraph (3) of section 48 provides that the opposite party may file affidavits "denying the facts alleged or establishing facts obviating the grounds of defect." The plaintiffs' affidavits set forth facts which obviated the statute of limitations as a bar. In addition, we know of no better method whereby the plaintiffs could fully present the issues of fraudulent concealment or estoppel to the defendants' claim that their actions were barred by the statute. The procedure followed by the plaintiffs is not unique. Devlin v. Wantroba, 72 Ill App2d 383, 218 NE2d 496 (1966) ; Kinsey v. Thompson, supra.

In order to avoid any misunderstanding, we wish to add that throughout this opinion we have referred to both the plaintiffs and the defendants in the plural for sake of simplicity. We do not intend thereby to suggest in any way what the respective rights or obligations of the several parties plaintiff and defendant may be. The only issue determined by this court is that as a matter of law, the complaint should not have been dismissed on the basis of the Statute of Limitations.

The motion for diminution of the record is denied, and the cause is reversed and remanded for further proceedings, not inconsistent herewith.

Reversed and remanded.

MORAN and SEIDENFELD, JJ., concur.