RAYMOND L. SABATH *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* LEONARD MANSFIELD *et al.*, Defendants-Appellees.—(MORRIS HANDLER CO., Defendant-Appellee and Cross-Appellant.)

First District (4th Division)   No. 61177

Opinion filed May 18, 1978.

Gale L. Marcus, of Chicago, for appellants.

Sol A. Hoffman, Maurice L. Davis, and Alvin L. Kruse, all of Chicago, for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The issues in this case are (1) whether a plaintiff suing for the fraudulent concealment of a breach of contract which allegedly caused serious injury to the plaintiff, can also bring suit in tort six years after the misrepresentation was discovered when any activity by the defendant which might have caused the plaintiff to delay bringing suit ceased long before the five year statute of limitations had run; (2) whether, if the plaintiff is limited to its contractual cause of action, it can recover punitive damages; and (3) whether in a case where the parties to a contract were a corporate lessee and a construction contractor, the sole stockholder of the corporation who later exercised the corporation's right to purchase the property from the lessor is a third party beneficiary of the contract and may sue for his own damages caused by the breach and its allegedly fraudulent concealment. We hold that the corporation is barred from pursuing any claim in tort and therefore cannot recover any punitive damages and that the sole stockholder—later owner of the property— likewise is barred from pursuing a tort claim and was not a third party beneficiary of the contract.

The material facts in this case are undisputed. On December 7, 1951, plaintiff Century Provision Company (Century), a corporation engaged in meat processing, leased certain property. The lease provided that the lessee should provide for liability insurance, could make alterations and, indeed, was required to spend a minimum of $30,000 on remodeling

within two years from the date of the lease; that all alterations should remain for the benefit of the lessor; that the lessee at the termination of the lease could remove trade fixtures unless the lessor should elect to purchase them; that the lessee could assign the lease to a successor or subsidiary of the lessee or some other person engaged in a similar line of business; and that if the lessor offered the premises for sale, the lessee had the right of first refusal. On April 25, 1953, the same parties signed an amended lease which deleted the requirement that Century remodel the premises, although Century still retained the right to do so. In June 1953, the defendant, Morris Handler Co. (Handler), contracted to do certain construction and remodeling work for Century. The contract provided that the work was to be done pursuant to certain plans and specifications, which included the construction of a certain loading dock and driveway on the leased premises; that Handler obtain and pay for all permits required by the work, and that it notify the owner of any conflict with existing laws and regulations. The work was completed in August 1955. Included among the additional charges submitted by Handler in May 1954 was "the sum of $500 which was paid for driveway permits."

In September 1954, plaintiff Sabath, having purchased the stock of the other stockholder, became the sole stockholder of Century. He also was a major creditor of Century, having loaned it money for the construction work and later for other purposes. On March 1, 1956, Sabath, through a nominee, exercised Century's right to purchase the property, Century itself not having the money to do so. A month later that land, along with some other land, was conveyed to a land trust, Sabath retaining the entire beneficial interest. The land trust provided that Sabath had the right to manage and control the premises and that the trustee had no duty therein or in respect to litigation.

Sabath and Century continued to use the driveway without interruption until about July 1961 when they learned for the first time that Handler had not, in fact, obtained the driveway permit as required by its contract and as it had indicated by its additional charge had been done. In either August or September of 1961, the plaintiff notified Handler of their discovery in this respect, and Handler immediately took steps to obtain the necessary permit. These steps included an attempt to obtain the permit from the city of Chicago; the filing of a lawsuit against the city upon its refusal to issue such permit, and the obtaining of an order in such proceeding which permitted the continued use of the driveway during the pendency of that lawsuit; the successful prosecution of the suit in the trial court wherein an order was entered directing that a permit issue; the defense of the case on appeal to the appellate court by the city of Chicago; and the attempt to have the matter heard by the supreme court upon the reversal of the trial court by the appellate court. (*Sabath v. City*

*of Chicago* (1965), 56 Ill. App. 2d 307, 206 N.E.2d 286.) On October 13, 1965, the supreme court denied Handler's petition for leave to appeal, and the plaintiffs were finally denied the use of the driveway.

It was not until June 13, 1967, that the plaintiffs finally filed suit against Handler and certain of its officers and directors for breach of contract, negligence and willful and wanton conduct in failing to obtain the permit and for fraud. The defendants first successfully moved to have the suit dismissed as barred by the statute of limitations. That determination was reversed by this court in 1968 in *Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 243 N.E.2d 723, which ruled that it was at the very least a question of fact whether the defendants were barred by their actions from relying on that defense, since it was not reasonable to expect the plaintiff to bring suit during the period from 1961-1965 when "the defendants, by their conduct, recognized their duty and obligation to the plaintiffs and were doing the very things which the plaintiffs desired and requested." (102 Ill. App. 2d 218, 223, 243 N.E.2d 723, 726.) This court, on the other hand, did not, in the 1968 decision determine that the defendants, as a matter of law, were estopped from raising the defense.

On January 15, 1971, a summary judgment dismissing the claim against the individual defendants was entered by the trial court, the order containing a finding of finality and appealability under Illinois Supreme Court Rule 304(a). However, no appeal was taken from that order until the rest of the case was resolved in July 1974. The trial court in January 1974 denied an attempt by the plaintiffs to amend the complaint by adding a count against the individual defendants who had been dismissed. The claims in this count were the same as those on which summary judgment had been entered. The trial court also denied a motion to join the trustee of the land trust as a party.

At the trial, the trial court directed a verdict for Century against Handler on the question of liability and only sent to the jury the issue of damages. However, it refused to give plaintiff Century's Instruction 12 which would have permitted the jury to consider the amount of money spent by plaintiff in the improvement of the premises, the amount of money paid for permit fees, and driveway permit, and the amount of the net rental income lost during the remaining life of the building. Instead the court limited the recovery of compensatory damages to the amount of money paid for permit fees and the driveway permit which was not obtained. In addition, the trial court refused to allow Sabath to introduce evidence of his damages, allegedly amounting to more than $700,000 and granted defendant's motion for a directed verdict against Sabath.

The jury returned a verdict for Century for $1,465.10 in compensatory damages and $75,000 in punitive damages. The plaintiffs have appealed

the dismissal of the claims against the individual defendants, the refusal to give Plaintiff's Instruction 12 and the refusal to allow evidence of the damages suffered by Sabath. The defendant does not object to the award of compensatory damages but has appealed from the award for punitive damages.

I.

■■ Before oral argument this court granted the defendants' motion to dismiss the appeal as to the individual defendants. Supreme Court Rule 304(a) provides that the time for filing the notice of appeal runs from the time of the entry of the court's finding that there is no just reason for delaying enforcement or appeal. The plaintiffs having failed to appeal the trial court's order in 1971, the present appeal is not timely and this court is without jurisdiction to hear the case. (*Johnson v. Coleman* (1977), 47 Ill. App. 3d 671, 365 N.E.2d 102, *appeal denied* (1977), 66 Ill. 2d 630; *Rone v. Boncar Construction Co.* (1976), 45 Ill. App. 3d 1, 358 N.E.2d 1315, *appeal denied* (1977), 66 Ill. 2d 628; *Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 295 N.E.2d 41.)

The plaintiffs' contention that the Rule 304(a) finding was inappropriately entered because a single claim was alleged against all the parties is without merit. Supreme Court Rule 304(a) does not provide that if multiple claims are alleged against multiple parties, the trial court on ruling upon one of the claims against one of the parties may enter an order finding that there is no just reason to delay appeal. Supreme Court Rule 304(a) provides rather that if there are multiple claims *or* multiple parties such a finding may be entered. Since here the plaintiffs had filed claims against multiple parties and the trial court had entered a final order determining that the plaintiffs could not recover from the individual defendants, the trial court's finding under Supreme Court Rule 304(a) was effective and the plaintiffs were required to appeal within thirty days from the entry of that finding. (Ill. Ann. Stat., ch. 110A, par. 304, Historical and Practice Notes, at 586, 587 (Smith-Hurd 1968).)[1] This they did not do. Accordingly, they are barred from pursuing any claim against the individual defendants which was adjudicated in that January 15, 1971 judgment. Since they are so barred, the trial court correctly refused to allow them to attempt to revive the claim by means of amending the complaint.

---

[1] We are aware that the fourth district in *Flynn v. Mahin* (1971), 1 Ill. App. 3d 51, 272 N.E.2d 381, indicated that a Rule 304(a) finding was ineffective to confer appellate jurisdiction where the case involved piecemeal litigation involving a single issue although a summary judgment was entered as to some but not all of the defendants. While that case is distinguishable on the facts, we do not find it persuasive in light of the express and unambiguous language of Supreme Court Rule 304(a).

## II.

■■ The plaintiffs in this case brought suit in both contract and tort against the defendant Handler. There is, of course, nothing wrong in pursuing a claim for both where the defendant in breaching the contract has also negligently, willfully or fraudulently violated some duty owed the plaintiff and arising out of the contract. Accordingly, in considering the merits of defendant's cross appeal, the issue before this court is not whether Century could have brought an action against Handler in both contract and tort, but whether it is barred by its delay from bringing the claim in tort. We hold that it is.

As this court ruled in *Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 243 N.E.2d 723, Century's cause of action in tort, at least for negligence, accrued in 1954. Accordingly, under normal circumstances, any such claim would have been barred in 1959. However section 22 of the Limitations Act (Ill. Rev. Stat. 1967, ch. 83, par. 23), provides that if the cause of action is fraudulently concealed it may be commenced at any time within five years after its discovery. As this court pointed out in its first opinion, the fraud which is the basis of the cause of action either may or may not constitute a fraudulent concealment of the cause of action, and the "representation made by the defendants constitutes, in our opinion, at the very least, a statement that would amount to a fraudulent concealment." (*Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 230, 243 N.E.2d 723, 729.) Assuming that it did so constitute a fraudulent concealment within the Statute of Limitations, the statute did not commence to run until 1961 when the fraud was admittedly discovered unless it should have been discovered earlier.

■■ However we need not determine whether the representation constituted a fraudulent concealment. Assuming that there was a fraudulent concealment so that the statute did not begin to run until 1961, suit was not brought until June 13, 1967, about eleven months after the period for bringing suit had expired. Nor can Century rely on the defendants' actions in bringing suit against the city as creating an estoppel to rely on the statutory period. It is necessary that one asserting an estoppel against pleading the statute of limitations should have relied upon the acts or representations of the other party and, because of such reliance, refrained from commencing action within the limitation period and that the defendants' conduct must be such as tends to induce the plaintiff to delay bringing the action. Accordingly, if the inducement for delay has ceased to operate sufficiently before the expiration of the limitation period so as to afford the plaintiffs ample time within such period to commence their action, then the plaintiff may not invoke the doctrine of estoppel. (*Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 243 N.E.2d 723; *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill.

App. 2d 267, 197 N.E.2d 860.) Here Century had eight months in which to file suit after any inducement for delay had passed. This, as a matter of law, was ample time. *Solt v. McDowell* (1971), 132 Ill. App. 2d 864, 272 N.E.2d 53; see also *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill. App. 2d 267, 197 N.E.2d 860 which held two months to be ample time; Annot., 44 A.L.R. 3d 760, 771-72, citing cases which without exception held that no estoppel to plead the statute of limitations could be found where the circumstances relied upon for such estoppel ceased to be operative from six months to one year prior to the expiration of the statutory period.

## III.

■ It is clear, therefore, that Century's only viable claim against Handler lies in contract. Handles does not contend that this claim is barred by the statute of limitations.[2] Nor does Handler contend that Century is not entitled to recover the $1,465.10 awarded by the jury as compensatory damages. What it does contend is that the plaintiffs are not entitled to recover punitive damages. In light of the fact that any action in tort is barred by the statute of limitations we are compelled to agree. The general rule in Illinois is that punitive damages may not be awarded for a breach of contract (*Wallace v. Prudential Insurance Co.* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344; *Alsip Homebuilders, Inc. v. Shusta* (1972), 6 Ill. App. 3d 65, 284 N.E.2d 509; *Sears v. Weissman* (1972), 6 Ill. App. 3d 827, 286 N.E.2d 777; *Ash v. Barrett* (1971), 1 Ill. App. 3d 414, 274 N.E.2d 149), unless the breach amounts to an independent willful tort (*McGrady v. Chrysler Motors Corp.* (1977), 46 Ill. App. 3d 136, 360 N.E.2d 818, *appeal denied* (1977), 66 Ill. 2d 631; *Wallace v. Prudential Insurance Co.* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344.) While allegedly the breach here did amount to an independent willful tort, any claim for that tort was barred by the statute of limitations. A suit for fraud committed in the breach of a written contract is governed by the five year statute applicable to all other civil actions not otherwise provided for. (Ill. Rev. Stat. 1975, ch. 83, par. 16; *Bates v. Bates Machine Co.* (1907), 230 Ill. 619, 82 N.E. 911.) Accordingly Century is limited to the simple contract measure of damages and the award of punitive damages cannot stand.

## IV.

■■ Century's contention that the trial court erred in instructing the jury that Century could only recover as compensatory damages the amount expended for the permit was waived by its failure to specify this point in any of the errors set out in the post-trial motion. (*Bryntesen v. Carroll*

[2] As ruled by this court in its earlier opinion, since the 10-year statute commenced running in 1954, the conduct creating an estoppel did not cease until long after the statutory period would otherwise have run. Thus as to this claim the defendant would be estopped to raise the defense that it was barred by the statute of limitations.

*Construction Co.* (1962), 36 Ill. App. 2d 167, 184 N.E.2d 129, *aff'd* (1963), 27 Ill. 2d 566, 190 N.E.2d 315; *Clifford v. Schaefer* (1969), 105 Ill. App. 2d 233, 245 N.E.2d 49, *appeal denied* (1969), 40 Ill. 2d 580.) Accordingly we need not consider the merits of this contention.

## V.

While it is true that the plaintiff Sabath may in fact be the principal party damaged by the defendant's action, we must agree with the trial court that under the particular facts of the case he cannot recover for the damages he rather than Century suffered.[3]

Sabath, like Century, has attempted to claim against the defendants in both tort and contract. Sabath is, of course, correct that no privity of contract is required for him to bring a suit in tort. (*Bergman & Lefkow Insurance Agency v. Flash Cab Co.* (1969), 110 Ill. App. 2d 415, 249 N.E.2d 729; 57 Am. Jur. 2d *Negligence* §50.) But unfortunately his cause of action is barred by the statute of limitations for the same reasons that Century's claim in tort is barred. And unlike Century, Sabath cannot bring a suit in contract against Handler because there is no privity of contract.

■■■ As a general rule only a party to a contract or those in privity with him may enforce the contract (*Rostad v. Chicago Suburban Water and Light Co.* (1911), 163 Ill. App. 63; *National Cash Register Co. v. Unarco Industries, Inc.* (7th Cir. 1974), 490 F.2d 285; *Aetna Insurance Co. v. Illinois Central R.R. Co.* (1936), 365 Ill. 303, 6 N.E.2d 189, *appeal dismissed* (1937), 302 U.S. 652, 82 L. Ed. 505, 58 S. Ct. 653), except that a third-party beneficiary may sue for a breach of a contract made for his benefit. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498; *Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, 178 N.E.2d 303.) But for a person to claim as a third-party beneficiary the contract must clearly show that such benefit was not purely incidental but that the contract was made for his direct benefit. (*Young v. General Insurance Co.* (1975), 33 Ill. App. 3d 119, 337 N.E.2d 739; *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498; 12 Ill. L. & Prac. *Contracts* §§266, 267 (1955).) The mere fact that a person was injured by a breach of contract or that he acted in reliance on it does not create a right to pursue a claim for breach of contract which he otherwise would not have had. (4 Corbin on Contracts §779B (1951).) Any remedy a person may have in such a situation would lie in tort not contract.

● 8   Sabath, at the time the contract was entered into, was one of the two

---

[3] We cannot agree, however, with the defendants' contention that Sabath cannot bring suit because the land was subject to a land trust and that the trustee cannot bring suit because the land trust no longer exists. Indeed the mere setting forth of the argument reveals its absurdity. Without determining whether the trustee or Sabath would be the proper party to bring suit, it is obvious that if Sabath did have a cause of action for the damages suffered, one of the two could bring suit.

stockholders of Century and before the contract was completed, although after the misrepresentation was made, became its sole stockholder. However, this fact alone in no way entitled him to bring suit on the contract. A corporation is an entity distinct from its stockholders, even sole stockholders, and they must be treated as separate legal entities. (1 Fletcher, Cyclopedia Corporations §25.1 (1974); 13 Fletcher, Cyclopedia Corporations §5709 (1970).) The mere fact that Sabath was a stockholder did not make him a party to the contract and he can claim no rights under it in the absence of a stipulation in it expressly for his benefit (*Sample v. Louisiana Oil Refining Corp.* (1927), 162 La. 941, 111 So. 336), since Century has not assigned its rights under the contract to Sabath. *Grosslight v. Butts* (1966), 3 Mich. App. 51, 141 N.W.2d 657.

■■ But even an assignment of Century's rights would not have helped Sabath here. An assignment would only have conveyed Century's rights under the contract, it would not have enlarged Handler's obligations. (*Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 349 N.E.2d 599, *appeal denied* (1976), 63 Ill. 2d 563; 3 Ill. L. & Prac. *Assignments* §52 (1953).) Here, Sabath is not attempting to recover the damages which Century suffered; Century supposedly has recovered those in this suit. Sabath is attempting to recover his own damages thus enlarging Handler's obligations and liabilities under the contract. For the same reason Sabath has no additional claim against Handler as a creditor of Century. Of course, a stockholder who is also a creditor of the corporation is entitled to subrogation in a proper case. (13 Fletcher, Cyclopedia Corporations §5756 (1970).) But again, subrogation only entitles the subrogee to recover what the subrogor could have recovered. His rights are no greater and no less than those of the subrogor. *McCormick v. Zander Reum Co.* (1962), 25 Ill. 2d 241, 184 N.E.2d 882; 6A Appleman, Insurance Law & Practice §4102 (1972).

Sabath argues, however, that the owner was a third-party beneficiary of the contract and that Sabath succeeded to the owner's rights thereunder when he purchased the property. We are unable to agree with either contention.

The initial lease required Century to remodel the premises. If this contract had remained in effect, it might have been successfully argued that the owner was a creditor beneficiary of the construction contact since it had been made to fulfill an obligation owed by Century to the lessor. (4 Corbin on Contracts §787 (1951).) But that lease had been revoked before the construction contract was entered into. It is, of course, obvious that the lessor received some benefit from the contract, or would have if Century through Sabath had not exercised its right to purchase. But this right was merely incidental; the construction contract was not made to confer any benefit upon the lessor. Compare *Dawson v. Eldredge* (1962),

84 Idaho 331, 372 P.2d 414, where it was held that an agreement between a materialman lienor and a loan association giving a mortgage that the home in question would be completed "free of all liens" was made for the benefit of the association and not the homeowner and the homeowner could not enforce the promise.

Sabath, however, contends that the language of the contract reveals that the owner was more than an incidental beneficiary in that the language of the specifications of the construction contract refer repeatedly to the owner. They do. The specifications provide that (1) the contractor shall save the *owner* harmless from loss on account of all patent infringements; (2) the *owner* shall furnish an adequate survey of the property; (3) the contractor shall notify the *owner* if the drawings and specifications are at variance with any laws and regulation; (4) the contractor shall permit and facilitate inspection of the work by the *owner*; (5) the *owner* may order changes in the work, the contract being adjusted accordingly; (6) the *owner* may, if the contractor fails to prosecute the work properly, made good any deficiencies and deduct the cost thereof from any payment then or thereafter due or may terminate the contract; (7) the contractor may terminate the work if the *owner* failed to make payments when due; (8) the making of the final payment by the *owner* would act as a waiver of all claims except for faulty work appearing thereafter; (9) the *owner* shall be responsible for maintaining liability insurance protecting him from liability; (10) the *owner* shall obtain fire insurance upon the entire structure; (11) final payment shall not be due until the contractor had furnished the *owner* a complete release from all liens, and (12) the architect shall make decision on all claims of the *owner* or contractor. Handler contends that as the specifications nowhere refer to the lessee, the word "owner" simply referred to the person making the contract with Handler, in this case, the lessee. While the language is not artful, we must agree. If we were to hold that the word "owner" here referred to the lessor we would be holding that although the lessor did not sign the contract and the lessee certainly did not have the authority to bind him, the contract attempted to impose certain obligations upon the owner, *e.g.*, to obtain fire insurance upon the entire property. Furthermore, following this interpretation, the contract attempted to shift the obligations to obtain general liability insurance from the lessee to the lessor. In addition, if we adopted this interpretation, we would reach the conclusion that the lessor could make modifications in the contract, greatly increasing the cost of the project, which modifications the lessee might not want, although under the lease "the expense of such remodelling and alterations shall be paid by the lessee, and no part of such alterations and remodelling shall be charged to the Lessor." Since we are unable to conclude that the parties intended to reach such an absurd

result, we agree with Handler that in this instance the term "owner" referred not to the owner but to the lessee entering into the contract.

■■ But even if the owner-lessor of the premises had been a party to the contract, we would be unable, in light of our supreme court's decision in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, to agree with Sabath's contention that he succeeded to those rights when he purchased the property. In *Rozny* a surveyor prepared an admittedly inaccurate survey for a firm engaged in real estate development, and later for the builder who had purchased the property. This survey carried an absolute guarantee of accuracy. A year later the plaintiffs purchased the property in reliance on the survey. While the supreme court allowed the plaintiffs to recover for tortious misrepresentation, it denied any recovery in contract, stating at 43 Ill. 2d 54, 60, 250 N.E.2d 656, 659:

> "While plaintiffs also invite us to treat this as a third-party beneficiary action and thus permit plaintiffs to sue as the beneficiaries of an express written warranty contract between defendant and the builder, Nash, it is clear that that contract was not made for the direct benefit of the plaintiffs as 'direct benefit' has been traditionally interpreted in connection with third-party beneficiary actions. (*Cherry v. Aetna Casualty & Surety Co.*, 372 Ill. 534; *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257-58.) Although we are aware of cases, (*e.g. Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill. App. 2d 362; *50 New Walden, Inc. v. Federal Ins. Co.*, 39 Misc. 2d 460, 241 N.Y.S. 2d 128) which evidence the increasing disregard for the privity requirement through continued expansion of the class of permissible plaintiffs under the third-party beneficiary doctrine, and realize that in factual situations similar to the instant case recovery has been granted under this theory, (*e.g., Vandewater & Lapp v. Sacks Builders, Inc.*, 20 Misc. 2d 677, 186 N.Y.S. 2d 103) we believe the fundamental reasoning underlying the tortious misrepresentation theory more nearly accommodates this case than the expanded third-party beneficiary doctrine."

For the foregoing reasons, the award of punitive damages of $75,000 is reversed, the award of $1,465.10 in compensatory damages is affirmed and all relief prayed for by the plaintiff is denied.

Reversed in part; affirmed in part.

JOHNSON, P. J., and DIERINGER, J., concur.